## PATENT CLOTHING COMPANY, LIMITED, *v.* GLOVER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 52.　Argued October 27, 1891. — Decided November 16, 1891

Reissued letters patent No. 9616, granted to Rodmond Gibbons March 22, 1881, on the surrender of letters patent No. 178,287, for an improvement in pantaloons, are void for want of patentable novelty in the invention claimed in it.

IN EQUITY, for the infringement of letters patent. The case is stated in the opinion.

*Mr. Causten Browne* for appellant.

*Mr. Gilbert M. Plympton* for appellee.

MR. JUSTICE BREWER delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of the United States for the Southern District of New York, dismiss-

ing the appellant's bill. The suit was for the infringement of
a patent. Rodmond Gibbons was the patentee. His original
patent was dated June 6, 1876, No. 178,287. This was sur-
rendered, and a reissue obtained on March 22, 1881, being
reissue No. 9616. Gibbons assigned to the appellant. Suit
was commenced by the filing of a bill, on June 18, 1884. The
answer tendered several defences, among them, that the reissue.
was void by reason of laches in applying for it, the applica-
tion not being made until nearly five years after the date of
the patent; because it was broader than the original patent,
and including in it matters not claimed or described therein;
that the patent was void for lack of invention and patentable
novelty; and also non-infringement. The patent was for an
improvement in pantaloons, and the specification in the origi-
nal patent was in these words:

"My invention relates to a fastening for the crotch in the
fly of pantaloons or similar garments, and it consists in bridg-
ing said crotch with a check-piece of cloth or other inelastic
pliable material, as hereinafter fully described.

" The object of this invention is to prevent that tension at
the crotch ordinarily produced either by continued use of the
garment, or by any undue strain caused by the assumption by
the wearer of any posture of the body, or by the removal of
the garment, calculated to produce such an effect."

And the single claim was: " In combination with the fly of
pantaloons or similar garments, an inelastic bridge or check-
piece, arranged across the crotch thereof, substantially as
described, whereby the strain at the crotch, when the fly is
opened and spread apart, is received by said bridge or check-
piece, instead of at the angle of the crotch itself."

The specification in the reissue reads: " My invention relates
to means for strengthening the crotch in the fly of pantaloons,
and has for its object to prevent that tension at the crotch of
the fly which is ordinarily produced, either by continued use
of the garment or by some undue strain upon the latter,
caused by the assumption of some posture by the person wear-
ing it or by some mode of removal of the garment from the
body calculated to produce such an effect, and which tension

frequently operates to rupture either the cloth or the seams, or both, at the vicinity of the said crotch.

"To this end my invention consists in the use, in connection with the fly, of a check-piece or strip of cloth or other inelastic pliable material, arranged to bridge over and protect from tensional strain the crotch of said fly, as will be hereinafter more fully described;" and these were the claims:

"1. The combination, with the fly of a pair of pantaloons or other similar garment, of an inelastic bridge or check-piece arranged across the crotch of the fly, and operating substantially as described, to receive any strain occasioned by the spreading apart of the fly, and which would otherwise be exerted upon the crotch of the fly.

"2. In combination with the fly portion of a pair of pantaloons or other similar garment, a check-piece made integral with the button-hole strip of the fly, and adapted to prevent any tension at the crotch that might operate injuriously upon it."

On proofs, the case went to final hearing before Judge Shipman, who, on the 14th of May, 1887, filed an opinion adverse to the appellant, and directed a dismissal of the bill. On a rehearing, a further opinion was delivered, the two opinions being found in 31 Federal Reporter, pages 816 and 818; and on August 4, 1887, the decree was entered, which, after reciting the hearing and rehearing, reads: "Now, upon due consideration of the same, and the court being of opinion that the second claim of reissued patent No. 9616, granted to Rodmond Gibbons on the 22d day of March, 1881, is invalid, unless it is limited to the bridge or check-piece of the original claim, and with that construction there is no infringement: It is ordered, adjudged, and decreed that the bill of complaint in said cause be, and the same hereby is, dismissed," etc.

It will be seen from this decree, and more fully from the opinions, that the conclusion of the trial judge was that the second claim of the reissue was an enlargement of the single claim of the original patent, and therefore invalid; or if not and it could be properly construed as describing the same thing, that that which was done by the defendant was no in-

fringement. It is unnecessary to review these opinions or determine whether there be, as the court found, any such variation and enlargement. There is a more grievous and radical defect in the appellant's case. There is not in the matter described and exhibited in any of the specifications or claims any invention within the meaning of that word as developed in recent decisions of this court, *Hollister* v. *Benedict & Burnham Man'f'g Co.*, 113 U. S. 59; *Thompson* v. *Boisselier*, 114 U. S. 1, 11; *Howe Machine Co.* v. *National Needle Co.*, 134 U. S. 388; *McClain* v. *Ortmayer, ante,* 419; and for that reason both patents, original and reissue, were void.

What is it that the patentee claims to have invented? Formerly the button and button-hole strips in the fly of pantaloons were separate pieces, whose lower ends being placed face to face were sewed together, and thus formed the crotch. Of course, then, any strain at the crotch was resisted by only the direct strength of the thread. The idea of the patentee was to add to the strength of the thread the strength of a piece of cloth, and this he did by a strip crossing the crotch as a bridge, and running up along the button and button-hole strips and fastened to them respectively. The strain, therefore, at this place would be resisted both by the thread and this strip of cloth, or inelastic bridge, as the patentee called it. A similar result was obtained when either one of these strips, the button or button-hole, was made longer than the other, and the longer one, instead of running downward into the crotch, was turned at that place and used as a bridge across it, and then ran up along the side of the other strip and was fastened to it. By either of these processes the tension was placed largely upon the strip of cloth, instead of solely upon the thread. But this was no new idea; it is as old as pantaloons themselves. It has been illustrated in the experience of every boy, for in his sports he not infrequently tears his pantaloons; and his good mother, not content with sewing the torn ends together, and thus holding them by the direct strength of the thread, is wont to place underneath a piece of cloth, and fasten it to the main body of the garment for some distance on either side of the tear. In this way the whole strain, which otherwise would be solely

on the threads closing the tear, is largely borne by the new cloth underneath. Surely when this idea is so well known, and has been so practically illustrated for generations, it cannot be that there was any exercise of the skill of an inventor in applying the same process to any part of the pantaloons. If it be said that the strengthening of the stay-piece here applied is not to the closing of a tear, but to a seam at an angle, it may be replied that such particular form of reinforcement is itself no new thing. An illustration is in the seam at the angle made by the fingers and thumb of gloves. As to that, it appears from the testimony that the practice was old of reinforcing the seam by an overlapping piece. Other illustrations are also furnished by the testimony, but it is hardly necessary to refer to these in detail. The matter is familiar to the knowledge of all, and surely the application of this reinforcing strip of cloth to any seam, or in any place where without it the tension would be solely on the threads, cannot be an exercise of the skill of an inventor.

We think, therefore, that the patent sued on was void for want of patentable novelty, and affirm the decree.

*Affirmed.*

MR. JUSTICE BRADLEY and MR. JUSTICE GRAY did not hear the argument or take part in the decision of this case.