## DEDERICK *v.* GARDNER *et al.*

*(Circuit Court, N. D. New York.　April 19; 1892.)*

1. PATENTS FOR INVENTIONS—INVENTIONS—BALING PRESSES. .
Letters patent No. 145,029 and No. 341,559, issued to Peter K. Dederick November 12, 1889, and May 11, 1886, respectively, the latter being upon a divisional application for an improvement in horizontal "continuous" baling presses, cover, as the gist of the invention, a device consisting of a loose connection, as a chain or rope, between the toggle and the horse lever, so that the toggle is pulled back and forth across the center line by the vibration of the horse lever. *Held* that, in view of the fact that the press has gone into extensive use, the device must be considered to have patentable invention, over the somewhat analogous device shown in patent No. 261,323, issued July 18, 1882, to George Ertel, and which is adapted to an upright press.

2. SAME—INVENTION—INFRINGEMENT.
Letters patent No. 232,400, issued to Peter K. Dederick, as assignee of Albert A. Gehrt, are for a method in a baling press, resisting the backward movement of the traverser caused by the expansion of the hay, consisting of the application of friction, so as to stop the motion gradually. Claim 3 covers the combination, with the traverser having the rearward extension, of the lining or planking, and the set screw for adjusting the same, substantially as described. *Held* that, if this involved any patentable invention, it is limited to the specific device, and is not infringed by the device covered by patent No. 349,934, issued September 28, 1886, to George Ertel.

In Equity.　Suit by Peter K. Dederick against Henry Gardner and others for infringement of a patent.　Decree for complainant.

*Church & Church*, for complainant.

*George H. Knight*, for defendants.

COXE, District Judge.　This is a suit for the infringement of three patents, Nos. 415,029, 341,559, and 232,400, granted to the complainant November 12, 1889, May 11, 1886, and September 21, 1880, respectively, for improvements in baling presses.　The latter patent, No. 232,400, was granted to complainant as assignee of Albert A. Gehrt. The application for the first two patents was filed October 31, 1882. This application was divided and a new one filed December 18, 1885, on which No. 341,559 was granted.　The invention of No. 415,029 relates to improvements in the manner of connecting the horse lever to the toggle in the power applying devices of "continuous" baling presses. Letters patent No. 257,153 granted to complainant May 2, 1882, show mechanism by which the toggle is pushed from one side of the center line to the other, the back expansion of the hay operating to return the traverser and project the joint of the toggle alternately out at opposite sides of the press as the horse lever is worked from side to side.　This

is known as a push-power device. The patent in hand describes a pull-power device. The substitution of a pull-power mechanism for the push-power of the older patent is the essential feature of the invention. Instead of pushing the toggle over the central line by direct contact with the head of the horse lever, it is pulled over by the horse lever through the intervention of a loose rope or chain connection.

After describing the various figures of the drawing and the operation of the machine the patentee says:

"These modifications in the form and location of the horse lever and cam may be multiplied indefinitely so long as the central idea is preserved of having the lever or the cam thereon connected to the toggle by a loose connection—such as a rope, chain, or the like—so that the vibration of the horse lever will draw the toggle back and forth across the center, as stated."

The claims involved are as follows:

"(2) In a baling press, the combination, with a double-acting toggle and a double-acting reversible horse lever, of a double-acting reversible connecting member secured at one end to said toggle and at the other end to the horse lever; whereby the said toggle and the said connecting member will be drawn bodily across the center alternately from opposite sides of the press when the horse lever is vibrated, substantially as and for the purpose set forth."

"(4) In a baling press, the combination with the traverser, of the arms, E, the double-acting pitman extending beyond the point of connection with the arms, E, the double-acting horse lever, also extended beyond its pivot, and the loose connection—such as a chain—for connecting the extended end of said pitman and horse lever, substantially as described."

"(7) In a baling press, the combination, with a double-acting toggle moving in a horizontal plane, of a reversible horse lever or sweep operating in a plane substantially parallel with the plane in which the toggle operates, and having a rounded or drum-shaped end, and a flexible connection attached at one end to the toggle and at the other end to the rounded or drum-shaped end of the horse lever or sweep, as set forth."

The invention covered by the single claim of No. 341,559 was originally part of No. 415,029. As the granting of the latter patent was delayed by an interference commenced by the defendant George Ertel, the complainant filed a divisional application designed to cover an arrangement of the power mechanism, not involved in the interference proceedings. The distinguishing feature of the invention is that the horse lever is mounted upon a pivot separate from the pivot on which the arms of the toggle are mounted. Instead of having the horse lever and fulcrum arms on the same pivot, each has a pivot of its own. The claim sufficiently describes the invention. It is as follows:

"In a baling press, the combination, with a traverser and a double-acting toggle, of a horse lever mounted upon a pivot separate from the pivot of the outer arm of the toggle, and a loose connection between the horse lever and toggle, whereby upon the vibration of the horse lever the toggle will be pulled back and forth across the center, substantially as described."

The defense to these patents is that they are void for lack of patentable novelty. Infringement is not seriously disputed.

The patent No. 261,323, granted to George Ertel, July 18, 1882, is

chiefly relied upon by the defendants. The press described in this patent is upright, the traverser moving vertically instead of horizontally. A detailed description of this press is unnecessary. Suffice it to say that while the principle on which it operates is somewhat analogous to that of the complainant's structure, the mechanism is wholly unsuited to operate in a horizontal press. Instead of being a simple and durable machine, it is the reverse of this. If the power device described could be made to operate in a horizontal press at all it would be a most cumbersome structure, requiring, in place of the compact frame of complainant's press, which is 2½ feet wide, the substitution of a frame between 12 and 15 feet wide. The difference between the two presses is the difference between partial and complete success. As the Ertel press of 1882 is the nearest approach to the combinations of the claims in question, it is not necessary to examine other references.

It is thought that complainant is entitled to the credit of having made the first operative pull-power machine for horizontal presses, and that the production of such a machine required the exercise of the inventive faculty. As was said by Mr. Justice BROWN in *Electric Co.* v. *La Rue*, 139 U. S. 601, 11 Sup. Ct. Rep. 670:

"While the invention does not seem to be one of great importance, we think the adaptation of this somewhat unfamiliar spring to this new use, and its consequent simplification of mechanism, justly entitles the patentee to the rights of an inventor."

The fact that this press has gone into extensive use and has been adopted by the defendants, to the exclusion of devices patented by Mr. Ertel, is entitled to great weight. *Magowan* v. *Packing Co.*, 141 U. S. 332, 12 Sup. Ct. Rep. 71; *Washburn & Moen Manuf'g Co.* v. *Beat 'Em All Barbed-Wire Co.*, 58 O. G. 1555, 12 Sup. Ct. Rep. 443. The claims quoted above seem to be aptly expressed to cover the inventions, and that they are infringed there can be no doubt.

In letters patent No. 232,400 it was the design of Gehrt to provide means for resisting the retraction of the traverser produced by the expansion of the hay, for the purpose of preventing shock. This is done by applying more or less friction to the traverser during its backward movement, thus stopping its motion gradually. The specification says:

"Various instrumentalities may be employed in carrying out this idea; but I prefer to adjust the lining or planking, E, by means of an adjusting screw or screws, S, so as to cause it to bear upon the top of the upper rear extension of the traverser, as shown in Fig. 1. By operating the screw the lining or planking can be made to bear more or less tightly, as will be readily understood. The lining or planking may be made permanently contracted, if desired, and the same result be produced."

The third claim only is involved. The second claim, which is much broader, has been declared invalid by this court. *Dederick* v. *Siegmund*, 42 Fed. Rep. 842. The third claim is as follows:

"(3) The combination, with the traverser having the rearward extension, of the lining or planking and the set-screw for adjusting the same, substantially as described, for the purpose specified."

The defenses are non-infringement, anticipation, and lack of patentable novelty.

The defendants' apparatus for checking the backward movement of the traverser consists of a clamp lever pivoted in its middle on the point of a screw. It is a double self-acting clamp. When the incline on the rear of the traverser strikes the incline on the rear of the lever the forward end of the lever is forced down upon the top of the traverser and arrests its backward motion. Whether the traverser comes back with a heavy or a light rebound is immaterial, for when it has reached the point where it is desirable to stop it the clamp catches it instantaneously and holds it firm. This device effectually prevents further backward motion, but offers no resistance to the next forward movement of the traverser. In this respect it is superior to the complainant's device, which does not adjust itself to the varying rebounds of the traverser, which sometimes returns with great force and at other times with comparatively little force. If, for instance, the lining is set to arrest a fast return and the back expansion is light the front end of the traverser will not clear the feed opening, thus causing inconvenience and delay. The defendants' screw does not perform the same function as the set-screw of the patent. The latter is used to force down the lining or planking and hold it in position to resist the backward throw of the traverser. The former is the pivot on which the lever operates, but it does not regulate the amount of the clamping force. The defendant Ertel obtained a patent, No. 349,934, on the 28th of September, 1886, for the apparatus used by the defendants. Whether the defendants infringe or not depends upon the construction of the claim. If a broad construction is justifiable, one which gives complainant the benefit of the doctrine of equivalents, infringement may be found, otherwise not.

In the first place, it may well be doubted whether the subject-matter of the Gehrt patent can in any view be regarded as belonging to the realm of invention. The problem he had to solve was an exceedingly simple one. The traverser bounded back too far. It did not require even a skilled mechanic to appreciate this defect. The remedy might not have occurred to the farmer who used the press, but had he called to his assistance the village carpenter, and asked him how to stop the traverser, it is, at least, possible that he might have replied—unconscious that his answer was giving him a place by the side of Bell, Brush and Edison —"Put on a brake."

It is, and for years has been, a matter of common knowledge in many similar arts that friction should be applied when the object is to stop or retard a moving body. The record discloses many instances where it has been used to accomplish results very similar in principle to that accomplished by Gehrt's device. For instance, if the word "traverser" were substituted for "shuttle" in the following quotation from the Haskins patent of 1868, it would describe the Gehrt mechanism in all essential particulars:

"To check this momentum gradually and arrest the motion of the shuttle at the proper point to receive the return blow of the picker shaft, a shuttle-

binder is generally placed upon or in the side of each shuttle-box, the operation of which binder is gradually to narrow the width of the passage in which the shuttle is moving and produce more or less friction upon the shuttle until it is brought to a stand-still. As the speed of looms is liable to be changed at times so that the rate of motion of the shuttle and its momentum will be greater at one time than another, it is desirable to vary the amount of friction or pressure exerted by the binder upon the shuttle, so that the shuttle, whatever its rate of speed, may always be stopped at the same point."

It is thought that this case belongs to that class of inventions where the doctrine of equivalents cannot be invoked to suppress improvements. Where change of form or combination only is involved, each inventor must be content with the mechanism claimed by him. *McCormick* v. *Talcott*, 20 How. 402; *Burr* v. *Duryee*, 1 Wall. 531; *Railway Co.* v. *Sayles*, 97 U. S. 564; *Bragg* v. *Fitch*, 121 U. S. 478, 7 Sup. Ct. Rep. 978. The traverser, moving in the press-box, was forced back too far, and Gehrt made the box smaller at the desired point, and stopped it. It is by no means clear that this involved invention. *McClain* v. *Ortmayer*, 141 U. S. 419, 12 Sup. Ct. Rep. 76; *Cluett* v. *Claflin*, 140 U. S. 180, 11 Sup. Ct. Rep. 725; *Clothing Co.* v. *Glover*, 141 U. S. 560, 12 Sup. Ct. Rep. 79; *Blake* v. *San Francisco*, 113 U. S. 682, 5 Sup. Ct. Rep. 692; *Pope Manuf'g Co.* v. *Gormully, etc., Manuf'g Co.*, 12 Sup. Ct. Rep. 637, 641–643.

But if the third claim can be sustained at all, it must be within narrow limits and confined to the precise mechanism claimed. As Gehrt could not claim all means of arresting the traverser by friction, and must be strictly confined to the method described, which consists in adjusting by a set screw the planking of the press-box to pinch and hold the traverser, and as the defendants do not use this mechanism, they cannot be held as infringers.

The complainant is entitled to a decree upon claims 2, 4 and 7 of No. 415,029, and the single claim of No. 341,559, but without costs.