## HOPEWELL v. LINSCOTT SUPPLY CO.

### (District Court, D. Massachusetts.   June 2, 1913.)

### No. 355.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—TIRE CASES.
   The Hopewell patent. No. 854,215, and the Kinder patent, No. 881,411, each for a tire case, for covering spare tires carried on automobiles, were not anticipated, and both disclose novelty and invention; also *held* infringed.

2. PATENTS (§ 81*)—ANTICIPATION—EVIDENCE OF PRIOR USE BY ANOTHER.
   Parol evidence to invalidate patents on the ground of prior public use by another considered, and *held* insufficient. unsupported by any authenticated exhibits of the alleged anticipating device.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 104; Dec. Dig. § 81.*]

In Equity.   Suit by Charles F. Hopewell against the Linscott Supply Company.   On final hearing.   Decree for complainant.

Clarence C. Colby and W. Orison Underwood, both of Boston, Mass., for complainant.

Chester C. Shepherd. of Columbus, Ohio, and Marcus B. May, of Boston, Mass., for defendant.

DODGE, Circuit Judge.   The defendant is charged with infringing United States patent 854,215, issued May 21, 1907, to Frank B. Hopewell (hereinafter called the Hopewell patent), and United States patent 881,411, issued May 10, 1908, also to Frank B. Hopewell, upon an assignment to him from Arthur H. Kinder, the inventor and applicant (hereinafter called the Kinder patent).   Each patent is for an improvement in tire cases.   Both patents belonged to the complainant when the bill was filed.

The defendant has sold tire cases made by the Vehicle Apron & Hood Company of Columbus, Ohio, which, if the patents sued on are valid, infringe the Kinder patent, and also infringe the Hopewell patent, unless it must be limited to the particular construction it describes. The validity of both patents is denied on the alleged grounds:  (1) Of want of novelty in view of the prior art;  (2) of anticipation by prior use.

[1] What the patents sued on and the alleged infringing devices alike seek to effect is to provide a waterproof covering for spare tires carried on automobiles, which, when on the tire, will cover them completely and in such manner as most effectually to protect them from dust or wet, at the same time fitting the tires neatly and closely, and being secured thereto by such means as will make the cover most easy to put on or take off.   Any suitable material—if waterproof, of course, the better—may be used.   The essential features common to the patented and infringing devices are:  (1) Their form is endless or annular, as opposed to that of tire cases having ends joining or overlapping when in position on the tire;  (2) their free edges overlap, and

overlap at the "tread" of the tire, instead of at the "bead"; (3) their free edges thus overlapping, one or both, are provided with pockets containing cords running longitudinally, used for the purpose of contracting that edge in whose pocket they run into a circle smaller in diameter than the circle occupied by the tread face of the tire. Each of the above features secures a distinct advantage of its own over tire cases wherein it is not found. (1) Making the case annular in form dispenses with any joint, whether overlapping or not, formed by the ends and encircling the tire where they join. One opportunity for water or dust to get at the tire is thus eliminated, and a neater fit on the tire is secured. (2) Overlapping the free edges, instead of merely joining and securing them, affords better protection, and overlapping them at the "tread," rather than on the "bead," of the tire, brings the overlapping joint into that position wherein it is most apt to shed, and least apt to retain, water coming from above the tire. (3) Whether carried in the pocket on the exposed overlapping edge, or in that of the covered overlapped edge, or in both pockets, the contracting string dispenses with buttons, studs, or laces, or other similar fastenings, and is thus, at the same time, a neater and more effectual means of keeping the case secure upon the tire, and permits of an easier and quicker application or removal of the case than any other means.

The above essential features of advantage in combination are secured by what is claimed in the first three claims of the Hopewell patent, or in the first claim of the Kinder patent. The construction of the case and the mode of applying it to the tire are alike in both patents. They differ in that the Hopewell patent covers broadly "a cord" in each longitudinal pocket mentioned, while the Kinder patent specifies in its various claims a "longitudinally elastic" cord—a "longitudinally elastic metallic" cord, or a "coiled metallic spring constituting a longitudinally elastic cord." "The cord" of the Hopewell patent is, according to claim 1, to retain its pocketed edge in a circle smaller than the circumference of the tire; according to claim 2, it is adapted to be drawn to contract the diameter of the edge that it may fit the tire; and according to claim 3, strain on the cord is to contract the edge as described. According to the specification, the cord is to be "drawn upon," or "drawn taut," and made fast. The longitudinally elastic cord of the Kinder patent, of course, contracts that edge of the case to which it belongs, and holds it in a circle smaller than the tire's circumference by virtue of the strain or drawing which is due to its inherent elasticity.

In none of the structures which those patents or publications describe, upon which the defendant relies to show the prior art, and thereby want of novelty in the patent sued on, can I find all the above features of advantage in combination as they are there found. With one exception, none of the prior tire cases are annular or endless, but all have ends to be joined or overlapped when the case is in position on the tire. The single exception is the British patent to Sloper in 1904; but I am obliged to agree with the plaintiff that the device therein shown would be inoperative, unless perhaps upon a very small or flexible tire. Other points of difference between the earlier tire

cases and those covered by the plaintiff's patent do not, under the circumstances, require special mention.

[2] The defendant claims to have shown that tire cases made in accordance with the claims of the patents in suit were made as early as the latter part of 1905, and sold as early as February, 1906, in Columbus, Ohio, by the Vehicle Apron & Hood Company. If this is proved, anticipation by prior use is established, because the alleged date of invention by Frank B. Hopewell is March 12, 1906, and the alleged date of invention by Kinder is between that date and March 17, 1906. The testimony relied on for the purpose comes from Gordon, at the time president and treasurer of the company mentioned, Brock, their cutter and foreman, Shaffer, then a cutter in their employ, and Thomas, then one of their salesmen. All these witnesses testified in March, 1913, seven years after the happening of the events about which they testified. Gordon, Brock, and Shaffer say they participated in making endless tire cases, overlapping at the tread of the tire, and having a pocket in each edge containing endless elastic cords, and that this was in the fall of 1905 or the beginning of 1906. Gordon says that some of the tire cases then made were shipped to customers of the company, beginning in February, 1906. Thomas testifies to a sale of some of them, made by him, and claimed to have been shipped to the customer February 26, 1906. Gordon produced, during his testimony, "Defendant's Exhibit Tire Cover A" as a tire case exactly like those said by him to have been made in 1905. But he has not undertaken to say that the exhibit itself was actually made in 1905 or 1906; on the contrary, his testimony is that certain marks upon the exhibit show it to have been made in June, 1907, and that he found it, two or three years before he testified, in the hands of one Wooster, from whom he purchased it, which would make the date of his purchase in 1910 or 1911. The exhibit thus produced contains in itself the evidence that, as originally made, it was not annular in form, but had ends which have been sewed together since it was first made, in order to give it its present annular form. There are other reasons for hesitation in accepting the testimony of the witnesses referred to to its full extent; but, in any view of it, it cannot be said to reach that standard of sufficiency which has been held necessary in repeated decisions for the purpose of establishing prior use under circumstances like these. See, in the Court of Appeals for this Circuit, Emerson, etc., Co. v. Simpson, etc., Corporation, 202 Fed. 747; De Laski, etc., Co. v. Fisk Rubber Co. (decided March 11, 1913) 203 Fed. 986. The necessary "concrete, visible, cotemporaneous" proofs are wanting. The nearest approach to such proofs in the defendant's evidence consists in certain "sales sheets," produced and identified by Gordon. These are invoices of articles sold to various customers of his company by its various salesmen, said to have been made in due course of business at the times of sale and since preserved. In sales sheets dated February 15 and 26 and March 12 and 13, 1906, and in others bearing later dates in March or April of that year, occur items billed as "tire cases," of dimensions and colors specified, and the prices at which they had been sold. The sales sheets do not further describe the tire

cases, and to prove that any one of them was in fact like defendant's tire case A the defendants have nothing better than the memory of witnesses, and of witnesses who did not themselves make the entries appearing on the sales sheets. Other tire cases are admitted to have been made and sold by the company during the same period and at the same prices as specified in the sales sheets. Entries such as these obviously cannot be called visible, cotemporaneous proof; and I do not find it necessary to discuss the 1906 catalogue of the company, wherein the plaintiff claims to find, and as I think with reason, strong ground for doubting the accuracy of the recollections testified to by the defendant's witnesses mentioned. Further reason for doubting it also appears from the fact that Gordon's company is not shown to have kept up the manufacture and sale of such tire cases during 1906 and 1907, although after the proved success of tire cases made under the patents in suit, and with full knowledge of them, they made and sold them upon a considerable scale in 1908 and afterward.

The plaintiff has shown that the commercial success of the Hopewell tire case, after its introduction in 1907, was considerable and immediate; that it rapidly displaced competing tire cases; that the Kinder tire case, when introduced in 1908, superseded not only other tire cases, but that of Hopewell; that the plaintiff's annual sales increased rapidly between 1908 and 1910; and that such sales fell off later under the competition of the defendant's alleged infringing tire cases.

I am of opinion that, as contended by the plaintiff, the first three claims of the Hopewell patent broadly cover the Kinder structure, and are infringed by the defendant's structure; also that the defendant infringes all the claims of the Kinder patent. Being unable to hold the patents sued on invalid, either for want of patentable novelty or because of anticipation, I must hold the plaintiff entitled to a decree for an injunction and an account.