## WILLIAM CARTER CO. v. EARNSHAW KNITTING CO.

District Court, D. Massachusetts. April 26, 1928.

No. 2802.

1. **Patents ⊜⇒157(1)—Claims of patent cannot be liberally construed, where idea illustrated preceded patentee's discovery.**

Claims of patent cannot be liberally construed, where inventor was not a pioneer in the discovery of the idea which the patent illustrated.

2. **Patents ⊜⇒165(2), 167(1¼)—Patentee's right is measured by his claim, which cannot be expanded by specifications.**

The claim is the measure of the patentee's rights, and specifications can never be made available to expand the claim, though they may be used for the purpose of explaining or limiting it.

3. **Patents ⊜⇒328—1,488,407, claim 1, for improvement in infants' bands, if valid, held not infringed.**

Redmond patent, No. 1,488,407, claim 1, for improvement in infants' bands by reinforcing means constituting ringlike tab, if valid, held, not infringed.

4. **Patents ⊜⇒72(1)—Prior device, which would infringe patent, if subsequent, anticipates it.**

Device, which if later would infringe patent, is considered as anticipating it, if it precedes.

5. **Patents ⊜⇒328—1,495,134, claims 1, 2, and 3, for improvement in infants' bands, held void for want of invention and anticipated.**

Redmond patent, No. 1,495,134, claims 1, 2, and 3, for improvement in infants' bands by arrangement of reinforcing tabs, held anticipated, at least as to claims 2 and 3, and void for want of invention.

In Equity. Patent infringement suit by the William Carter Company against the Earnshaw Knitting Company. Plaintiff's bill dismissed.

Emery, Booth, Janney & Varney and Irving U. Townsend, all of Boston, Mass., for plaintiff.

Francis J. V. Dakin, of Boston, Mass., for defendant.

BREWSTER, District Judge. This is an infringement suit based upon two letters patent of the United States issued to the plaintiff as assignee of Harriet L. Redmond. The patents were numbered and dated, respectively, 1,488,407, March 25, 1924, and 1,495,134, May 20, 1924. The patents purport to relate to improvement in infants' bands, but the alleged invention of each relates to the reinforcement of portions of the band to which would be pinned the infant's diaper. These bands are used on small babies and are generally tubular and seamless in formation. For many years these bands were provided with what has come to be known in the trade as "tabs," which were nothing more than reinforced areas through which the pins would be passed when the diaper was attached. The tabs first adopted were depending tabs. Later they were reversed upon the garment, so that the reinforced area came above the bottom of the band. The earlier bands were provided with front and back tabs, to which the older form of triangular diaper could be pinned, the three corners being brought together at the front and pinned to the front tab, the back portion being pinned usually to the back tab.

The defendant began to manufacture infants' bands in 1912, and as early as 1916 it was putting out bands with the upturned front and back tab. As early as 1912 or 1913 what is known as the "square" or "Swedish" diaper was introduced into hospitals and homes in the far Western states. This form of diaper, rectangular in shape, is folded into generally squared form and, when applied to the infant, the corners are brought together at the infant's side and are there pinned together and to the side of the band. This square diaper was said to possess advantages over the older type, and its use was advocated by nurses and physicians. The result was that manufacturers of infants' bands received requests for a garment that would have the tabs on the sides instead of in front and back. The defendant first

manufactured a band with side tabs early in 1921, but had not added it to its regular line prior to April 12, 1921. For a time immediately thereafter, the defendant manufactured and sold two lines of bands, some with front and back upturned tabs and some with side upturned tabs. In 1925 it put on the market what is called the "universal band," or a band with the universal tab. This garment had a relatively wide hem turned up, the upper edge of which was made undulatory, or scalloped, and seamed to the body of the band. The scalloped hem was so cut that, when placed, it brought reinforced areas in front and in back and on either side of the garment, thus adapting the band for use either with the triangular or square-fold diaper. It is this garment that the plaintiff alleges infringes the first claim of patent No. 1,488,407 and the three claims of No. 1,495,-134.

The application for the first patent was filed May 2, 1922. The first claim is as follows:

"An infant's shirt or band having an undivided tubular elastic body portion and a continuous relatively narrow flaplike member of substantially the same elasticity as said body portion elastically seamed at its upper edge only upon one face of· said body portion at a distance above its lower edge at least equal to the width of said flaplike member, the latter being adapted to receive diaper attaching means at any point or points circumferentially of the band."

It is the plaintiff's contention that the scalloped hem of the defendant's garment comes within the scope of this claim. Attention is called to the fact that, in her application, the applicant stated that the flap may be formed of one or several separate strips of fabric united by seaming their lower edge and that the lower edge of the flaplike member desirably is unattached to the body portion of the garment.

[1] Upon these statements the contention is now based that the monopoly acquired by this first claim extends to every method of reinforcement if the reinforcing means constitutes a continuous ringlike tab, elastically seamed along its upper edge. The inventor was not a pioneer in the discovery of the idea of providing reinforcement for those parts of the band that received the wear and the strain resulting from the pinning of the diaper thereto, and cannot ask for a liberal construction upon her claim. See Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122; Kokomo Fence Machine Co. v. Kitselman,

189 U. S. 8, 23 S. Ct. 521, 47 L. Ed. 689; Shevenell v. Kelly (D. C.) 19 F.(2d) 791, 792.

[2] Enough has already been stated to indicate that various means for such reinforcement had long been known to the practical art. It may here be added that they are also to be found in the prior patented art, for example, the patents granted to Ovenshire in 1905, No. 800,237, and to Royce in 1914, No. 1,110,459. Furthermore, the claim is the measure of the patentee's right, and, while specifications may be used for the purpose of explaining or limiting the claim, they can never be made available to expand it. McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 35 L. Ed. 800. Whatever of novelty may be found in the invention must reside in the particular means adopted for receiving the attaching means of the diaper disclosed in the patent. This means is clearly the "flaplike" member described in the claim and shown in Figure 2.

It is reasonably apparent, from a study of the specifications, that the flaplike member was designed primarily to receive the pins which would not necessarily pass through the body of the garment itself; in fact, one of the advantages claimed for the alleged invention is that the narrow flaplike member may be removed and replaced, if worn by constant pinning. It is not possible to find in the defendant's band anything corresponding to this flaplike member as thus described and shown. To extend the scope of the claim to cover reinforcement obtained by turning up and seaming to the body of the garment an undulatory hem is to do violence to the English language. The word "flap," as defined in the dictionaries, necessarily involves the idea of something flexible, that hangs loose and is capable of a flapping motion. Every definition that I have found excludes the idea of a closely seamed hem, which does not, and cannot, hang loosely.

Furthermore, the evidence clearly shows that this patent was never anything more than a paper patent. The invention was no material contribution to the art. The plaintiff never deemed it of sufficient value to manufacture bands under this patent, because of the disproportionate expense and the objectionable bulk of the garment. There is nothing to indicate that it was a commercial success.

[3] While I do not regard the validity of this patent as beyond doubt, if confined to the specified circular flaplike ring, composed of one or more strips and seamed at the up-

per edge only to the body portion of the garment, it may possibly be sustained. If its validity be conceded, the defendant's band does not infringe.

As to the second patent, which was issued upon an application filed Januray 31, 1923, the plaintiff alleges that all three claims of this patent are infringed. The first claim is for an infant's band with four tabs, or diaper-supporting sections, constituting means for attachment of diapers to the garment. These tabs, or supporting sections, are of substantially the same material as the body portion and are located in front and rear and at the two sides of the body portion. As stated in the claim, and as shown in the drawings, the front and rear tabs are depending. The side tabs are not depending. One of the illustrations shows the front and rear tabs reversed or folded back upon the band, and it may be conceded that the upturned tab would be an equivalent of the depending tab. The claim could be reasonably interpreted to cover an infant's band with four tabs, two at the sides and the others at the front and rear, whether depending or upturned, thus providing a band which could be adapted for use with either the triangular folded or square folded diaper.

The second and third claims are for the side tabs only, which are placed above the lower edge of the band, and constitute means for attachment of diapers to the garment, or provide reinforcing areas for the reception of diaper supporting means.

To use in its garment an undulatory hem, in the manner adapted by the defendant, is in effect to provide it with four tabs, and the garment would infringe the first claim of the patent, and it also discloses reinforcing areas at the sides and would infringe the second and third claims of the patent, if these claims can be sustained as valid.

The plaintiff claims November 5, 1920, as the date when the alleged inventions, to which the two patents relate, were first disclosed. Assuming for the moment that the plaintiff has established this date as the date of the discovery, I have already noted that infant bands with reinforced areas for the reception of diaper supporting means, front and rear, had been in use for many years before this date. If it should appear from the evidence that prior to that date the reinforcing areas, adapted for the use of the Swedish diaper, had been placed on infants' bands at the two sides, then the first claim would be nothing more than an aggregation of old elements, and therefore not patentable. There would be produced no new result, nor any old result in a new way. It would be equally true that the second and third claims would be anticipated.

It becomes, therefore, material to inquire when infants' bands with side tabs, or diaper supporting areas at the sides, were first introduced into the trade. It has already appeared that the new method of folding and applying the diaper, known as the "Swedish" method, appeared in the states along the Pacific Coast as early as 1913. Considerable evidence was offered to show the earliest date when the defendant, the Minneapolis Knitting Works, of Minneapolis, Minn., and the Thomas Dalby Company, of Watertown, Mass., manufacturers of infants' garments, had manufactured bands with side tabs. For the most part, this evidence does not come up to the requirements which the courts have deemed necessary in order to establish prior use. Hopewell v. Linscott Supply Co. (D. C.) 205 F. 757; Emerson & Norris Co. v. Simpson Bros. Corp. (C. C. A.) 202 F. 747.

There was evidence in the case that both the defendant and the Dalby Company received requests for side tab bands late in 1920, but no "concrete, visible, contemporaneous proofs which speak for themselves" was shown (Emerson v. Simpson, supra), that would fix the date of the manufacture of bands with side tabs prior to April, 1921.

There is, however, such proof respecting the bands manufactured by the Minneapolis Knitting Works, which responded to the demands of the trade much earlier than the Dalby Company or the defendant. It is satisfactorily established that this company put on the market an infant's knit band with woven tabs at the side of the garment before 1916. The bands that were manufactured by the Minneapolis Knitting Works prior to 1918 had both the side tabs and the front and back tabs. After 1918, the bands only had the side and front tabs.

[4, 5] The plaintiff argues that these bands do not anticipate its second patent, because the tabs were made as loops of woven material, attached at the bottom of the garment, but not below it; these tabs being attached also to a narrow tape set on the knitted fabric running from the tabs to the shoulder. If the Minneapolis Knitting Works had manufactured and sold the infants' band, to which I have just referred, subsequent to the date of defendant's patent, I do not think that the plaintiff would have rested long without instituting proceedings for infringement, and if, in such event, the Minneapolis Knitting Works had sought to escape the charge of infringement by claiming that the support-

ing tapes, to which the tabs were attached, introduced an important improvement, it would have been confronted with the cases cited in plaintiff's brief, such as American Brake Shoe & Foundry Co. v. Hoadley Brake Shoe Co. (D. C.) 222 F. 327, 332, and Butler v. Burch Plow Co. (C. C. A.) 23 F.(2d) 15, which support the proposition that one cannot escape infringement by adding to or taking from the patented device, or by rendering it more or less efficient, if they retain the principle and mode of operation and obtain results by the use of the same or equivalent mechanical means. Invoking the familiar doctrine that "that which infringes, if later, would anticipate, if earlier" (Superior Skylight Co. v. Zerbe Const. Co. (D. C.) 5 F. (2d) 982), it follows that the band of the Minneapolis company anticipates all the claims of this second patent.

But, if this were otherwise, I think the patent would have to fall for the want of invention. See Patent Clothing Co. v. Glover, 141 U. S. 560, 12 S. Ct. 79, 35 L. Ed. 858; McClain v. Ortmayer, supra; Dalby v. Lynes (C. C.) 64 F. 376.

If we except the side tabs, then the only remaining feature of construction disclosed in the second patent in suit is shown in the prior art. Infants' bands, knitted in seamless, tubular, or cylindrical form, were known, manufactured, and sold for many years prior to Mrs. Redmond's alleged discovery, and such garments had been manufactured by the defendant since 1916.

The front and back tabs, whether depending or not, were old. If we assume that the side tabs were new, the only contribution made by the inventor was to add to an infant's band, such as had long been known in the trade, additional reinforcing areas at the sides, in order that the Swedish form of diaper might be attached thereto without injury to the body of the garment. This would not, in my opinion, involve the exercise of the inventive faculty. It is nothing more than an obvious expedient, which would have occurred to any one desiring to adapt the band to the new style of diaper. It would not even call for any considerable mechanical skill. There was evidence before me tending to show that mothers and nurses, before the date of the alleged discovery, were stitching to the sides of the babies' band pieces of fabrics through which the Swedish diaper might be pinned.

I have reached the conclusion, therefore, that while the defendant's garment would infringe the second patent, if valid, the validity of the patent has not been established.

This conclusion renders it unnecessary for me to consider the evidence for the purpose of fixing the exact date of the alleged discovery, concerning which the defendant, with some reason, has raised a question.

To recapitulate, I find and rule that the defendant's infants' band does not infringe plaintiff's patent, No. 1,488,407, and that patent No. 1,495,134 is invalid for want of invention, and, further, that claims 2 and 3 were anticipated by the Minneapolis Knitting Works, which had manufactured and sold bands with side tabs more than two years prior to the filing of the application upon which the patent was issued.

Plaintiff's bill may be dismissed.