### LARX CO., Inc., v. GIBBS & CO.*

### GIBBS & CO. v. LARX CO., Inc.

### Nos. 11138, 11139.

Circuit Court of Appeals, Eighth Circuit.

July 19, 1938.

George F. Williamson, of Minneapolis, Minn. (Ralph E. Williamson and Williamson & Williamson, all of Minneapolis, Minn., on the brief), for Larx Co.

Samuel E. Darby, Jr., of New York City (Emanuel R. Posnack, of New York City, and Junell, Driscoll, Fletcher, Dorsey & Barker, of Minneapolis, Minn., on the brief), for Gibbs & Co.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The bill of complaint charged infringement of three patents owned by the plaintiff. The court rendered decision as to each patent and these two appeals are taken to reverse the decree so far as it relates to two of the patents. We consider first:

Arnao Patent, No. 1,421,756, July 4, 1922, Filed November 4, 1921.

Claims 9 and 10 were relied on and held to be valid and infringed.[1] They relate to massage apparatus to supply steam to the human head. That function necessarily involves providing water to be converted into steam, a heater to convert it, a conduit to convey it to the point of application and a hood for the head and the steam. The art of so applying steam to the head was old and was clearly illustrated in apparatus patents long prior to Arnao. But Arnao was the first to suggest in the combination of elements in such an apparatus the use of a switch controlled electric resistance unit for heating the water to supply the steam. If we omit from the claims the electric heater and switch, the remaining elements secured in his claims 9 and 10 would be: "in a massage apparatus in combination," (1) a face steaming hood; (2) a boiler; (3) a steam conduit connecting said boiler and said hood; (4, 5) a portable stand with vertically adjustable member mounting the other elements.

All of those elements were old in the same art and were illustrated in Blits 510,-235 of 1893; Henry 896,538 of 1908; Metzler 892,441 of 1908; Burgoyne 461,520 of

---

*Rehearing denied Aug. 22, 1938.

[1] "9. In a massage apparatus in combination, a face steaming hood; a steam-generator comprising a boiler and an electric resistance unit; a steam conduit connecting said steam-generator and said hood; a portable stand mounting said hood and said steam generator; and an electric switch for controlling said resistance unit.

"10. The apparatus described in claim 9 and further characterized by the fact that the portable stand comprises a vertically adjustable member for adjusting the position of the face steaming hood."

1891; Karpenstein 696,342 of 1902. The remaining two elements of the claims not found in earlier head steamer patents were the switch controlled electric resistance units to supply heat to the boiler.

There is no suggestion that Arnao had anything to do with inventing the electric water heater or switch. The references to those elements in his patent specifications are merely to "an electric heater 19 secured up against the bottom 20 of the boiler supplies the necessary heat", and to "control switches 13 and 14", and in the patent drawing a conventional symbol for any kind of an electric heater adapted to the space is used. The heater switch was not drawn or specifically described. The electric heater and switch, like all the other elements of the combination, were old. Hunnewell 938,237—1909.

It seems very clear that no invention was involved in putting a switch controlled electric resistance unit under the boiler to supply steam in the machine in question. Such switch controlled units were at the time coming into common and general use, and to put one under the boiler in a steamer intended to apply steam to the human head was suggested by the times rather than by inventive faculty. In Tropic-Aire, Inc., v. Sears-Roebuck & Co., 44 F.2d 580, this court considered a patent for water heaters adapted to heat automobiles. It there appeared that the heaters filled a recognized want in the automobile industry which many others had sought in vain to satisfy. But the water heaters were old art and merely to select them from the old art and adapt them to heating automobiles involved no invention. In so holding, this court included in the opinion an elaborate review of the precedents.

It is contended for the patentee that his machine is small, compact, convenient, efficient, safe, easily handled and adapted to use in barber and beauty shops, and that it was the first commercially successful scalp and hair steaming machine. The evidence establishes that since the date of the Arnao patent, Mr. Arnao has devoted himself with very great energy and ability to creating demand for head steaming and to satisfying the demand with his products, and he has contributed to selling and putting in use a large number of his machines. They appear to have the useful qualities ascribed to them and have been satisfactory in use. Mr. Arnao has earned for himself a very high position in the field of his vocation.

But it does not appear that the patent, so far as the claims relied on are concerned, was the creation of any inventive faculty on the part of Mr. Arnao.

Recalling the elements: (1) "A face steaming hood" allowed the use of any hood. None was described in the patent specifications, but the type shown in the drawings and used by Mr. Arnao was one like Henry and Blits; (2) "a steam generator comprising a boiler" is specified "B which may conveniently take the form of a small boiler" and it is pictured about like a tomato can appropriately apertured; (4) "a steam conduit connecting said steam generator and said hood" is specified merely as "a flexible metal conduit"; (5-7) "a portable (vertically adjustable) stand mounting said hood and said steam generator"; (3-6) "the switch controlled electric resistance units."

We can not discern in the selection and putting together of these old elements anything beyond a mere aggregation. They cooperate in the sense that the portable stand supports the other elements; the heater converts the water in the boiler into steam; the conduit conveys it to the head inserted in the old type hood. Each element performs the same function theretofore performed by it in the same art in the same way, except the electric heater which was selected and not invented. Such an aggregation is not patentable. If Mr. Arnao had originated the idea of a head steamer made up of a boiler, heater, conduit and hood, portably mounted, a monopoly as wide as the combination of elements so broadly recited in the claims would be due him. But it is manifest that he did not. The claims go far beyond anything he originated. The unquestioned merit of his machines arises from mechanical skill with which those old elements theretofore used in the art were adapted and put together to accomplish their well understood purposes. The effect of the application of such skill often is, and was in this instance, to produce a handier, more compact and usable machine. Claims 9 and 10 of the patent are void for want of invention. Lincoln Engineering Company v. Stewart-Warner Corp., 58 S. Ct. 662, 82 L.Ed. ——, March 28, 1938.

Davis Patent, No. 1,982,905, December 4, 1934,
Filed December 7, 1932.

The patent is for improvements upon the Arnao patent steamers which had come into extensive use in beauty parlors for

scalp and hair treatments. The trial court deemed it unnecessary to pass upon validity because the defendant's structure was found not to infringe. Claims 1 and 3 are here relied on.

The relevant improvements covered by claim one involved in this appeal are (1) "a somewhat different hood of the general shape disclosed in the Arnao patent" designed so that its lower edge inclines downward toward the lower rear end where the steam supply is discharged out of the conduit from the steam generator into the hood; and (2) "a rim secured to the lower edge of said hood and having an upturned inner flange throughout its length constituting a trough * * * so arranged that collected moisture will be returned to the discharge of said source of steam supply."

The apparatus manufactured by defendant is called "Steamaster" and is sold in competition with plaintiff's for the same purposes. It has a steaming hood to contain the head and steam, and there is a trough along the lower edge of the hood to carry off the condensate. But instead of carrying the condensate into the conduit of the steam supply, defendant's trough leads the condensate into a pipe whence it flows into a separate container from which it may be wasted.

We agree with the trial court in its conclusion that there was no invention in fashioning the Davis hood with an upturned rim to collect the condensate. The idea was old in steamers. Medart, 1,705,776—1929; Otto, 1,532,199—1925; Deckard, 622,209—1899. If there was invention in the particular construction of the Davis trough returning the condensate to the discharge of the source of steam supply, the defendant's trough does not infringe because it leads the condensate out of the hood into a pipe instead of leading it into the steam discharge as Davis does.

The other claim of the Davis patent relied on is claim 3. It includes as an essential element "said hood having a pair of oppositely disposed elongated apertures in the rear side portions thereof disposed respectively at the sides of the scalp of the subject treated and through which the arms of an operator may be thrust to enable the two hands of the operator to cooperatively massage the scalp and hair during the steam treatment."

The idea of providing a head steamer with an opening through which the operator could reach in and massage the head was old, being found in Henry, supra. There was no invention in providing two holes instead of one. If there was any invention in the elongated apertures of claim 3, still there was no infringement by defendant because the holes in defendant's hood are not elongated—they are round. The difference is sufficient to avoid infringement, having regard to the narrow advance of the patent.

Each of the numerous assignments of error and the supporting arguments ably presented in the comprehensive brief of counsel have been considered in connection with the volume of testimony, but we think the trial court correctly analyzed the testimony and expounded the applicable law with sufficient amplification. We find no error in the decree as to the Davis patent.

Remand with directions to modify the decree by finding claims 9 and 10 of the Arnao patent void, and in all other respects to affirm. Costs of appeals and suit to be taxed to Larx Company, Incorporated.