## EVR–KLEAN SEAT PAD CO. v. FIRE-STONE TIRE & RUBBER CO.

### No. 11784.

Circuit Court of Appeals, Eighth Circuit.

April 1, 1941.

Lawrence C. Kingsland, of St. Louis, Mo. (Ralph Kalish, Edmond A. B. Garesche, and Alfred W. Petchaft, all of St. Louis Mo., on the brief), for appellant.

Charles W. Owen, of Toledo, Ohio (Robert G. Maysack, of St. Louis, Mo., and Owen & Owen, of Toledo, Ohio, on the brief), for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

This is a suit for patent infringement. The trial court dismissed it on the ground that the patent was invalid, and plaintiff has appealed.

The patent involved is Reissue No. 16,-288, dated March 9, 1926, on improvements in slip covers for automobile seats, in favor of Rufus R. Eddins, held by plaintiff as assignee.

The specifications made provision for an independent cover-section for the seat cushion, and one for the back, each with a matting panel of interwoven strands of grass, cane or other vegetable fiber, covering the cushion surface, reinforced along the edges, on both top and bottom, with cloth strips, stitched together through the matting, and with one of the reinforcement strips extended to provide a means for securing the cover. In the case of the seat section, the cloth projection was to serve as a valance for the cushion and was to be fastened underneath it with a draw-cord. In the case of the back section, the cloth was to be extended sufficiently to enable the cover to be fastened with tacks or straps.

In the drawings, a somewhat narrow reinforcement strip was indicated underneath the matting, and the strip on top was shown with one of its edges folded, to add strength in seaming, and with the cloth extended at the other edge of the seam sufficiently beyond the matting for use in securing the cover.

The evidence is conclusive, and plaintiff concedes, that, for many years prior to the Eddins' patent, slip covers identical in style, but made wholly of cloth, were in general commercial use. Eddins himself was engaged in manufacturing such slip covers at the time of his alleged invention. The wearing panels in the cloth covers did not require edge reinforcement, such as was necessary in any practical use of straw-matting, to keep it from fraying. It is also incontrovertibly established that removable pads of matting material reinforced with cloth strips around the edges, to be laid upon the seat pad and against the back cushion, were similarly in previous general use. Eddins testified that the idea of using matting material had occurred to him from observing it in street car seats. He further indicated on the witness stand that what he had in mind in making application for a patent was "to secure the idea of using a straw matting as the wearing portion of a seat cover."

It was the trial court's view that all Eddins had done was to substitute a section or panel of matting material for one of cloth in the slip cover structures then on the general market; that such substitution merely sought to utilize, for automobile seat cover purposes, the advantageous qualities of coolness, cleanliness and general

comfort, which matting recognizedly possessed over cloth, without developing any new properties or involving any actual novelty in the method of its use; that the fact that the edges of the matting were reinforced did not make its use patentable, since edge reinforcement was admittedly necessary in any practical use of such material, and the method described in the specifications was purely such an adaptation as would obviously suggest itself to any one skilled in the art who was desirous of effecting the substitution; and that Eddins' patent claims accordingly failed to attain the level of invention.

■ There is, of course, no invention in simply substituting one material for another in a manufactured product, in order to obtain the benefit therein of some of its known, superior qualities or characteristics. Walker on Patents, Deller's Edition, § 29; Western Willite Co. v. Trinidad Asphalt Mfg. Co., 8 Cir., 16 F.2d 446. Though the particular use be new and the utility of the product be greatly enhanced thereby, there is no patentability involved so long as it constitutes only an extended application of the obvious attributes of the material. Frederick Stearns & Co. v. Grove's Laboratories, Inc., 8 Cir., 87 F.2d 822; Insulite Co. v. Reserve Supply Co., 8 Cir., 60 F.2d 433; Goldman v. Polan, 4 Cir., 93 F.2d 797; Kemper-Thomas Co. v. J. P. Gordon Co., 6 Cir., 67 F.2d 478. For a substitution of materials to constitute the basis for a patent, the use sought to be protected must be one, not of analogous extension, but of discovered novelty, or it must rest upon some real originality in the method of applying the material to such use. Florsheim v. Schilling, 137 U.S. 64, 11 S.Ct. 20, 34 L.Ed. 574. The fact that a practical difficulty is presented and solved, in adapting the material to the desired use, does not give rise to patentability, if the method of adaptation is such as would obviously suggest itself to those skilled in the art, when confronted with the task of making the substitution. H. D. Hudson Mfg. Co. v. Standard Oil Co., 8 Cir., 60 F.2d 377; Aro Equipment Corporation v. Herring-Wissler Co., 8 Cir., 84 F.2d 619; Standard Parts, Inc., v. Toledo Pressed Steel Co., 6 Cir., 93 F.2d 336. The patent law was not intended as a dam to divert natural changes and evolutionary progress in the arts into the laterals of monopoly. The general skill and judgment of the crafts belong to society as a whole, and invention is separable from the social stream only because it possesses a different specific gravity than the natural waters. Reckendorfer v. Faber, 92 U.S. 347, 23 L.Ed. 719; City of St. Louis v. Prendergast, 8 Cir., 29 F. 2d 188.

■ We agree with the trial court that what Eddins did in this instance was merely to substitute a section of straw-matting, with the edge reinforced,—which was necessary in any practical use of such material—for a section of cloth, in the wearing panel of the automobile slip covers then on the market. Clearly, there was no uniqueness involved in using cloth strips for marginal reinforcement purposes, since the edges of the removable straw-matting pads known to the prior art had been thus reinforced. Quite obviously also, in order to make the matting panel an integral part of the slip cover structure, it had to be stitched to the cloth of which the structure was constituted. It is not claimed that any novelty inhered in the stitching that was employed. If then any novelty existed, it apparently lay in the fact that, in integrating the matting into the slip cover structure, one edge of the cloth was doubled under and stitched onto the top of the matting section and made to serve as part of the marginal reinforcement. But we are unable to see any difference, except one of craftsmanship, between this method of reinforcement and that of simply using a separate strip of cloth on top of the matting and then sewing the fabric of the cover structure onto the reinforced matting-edge. Considerations of comparative simplicity, economy and strength necessarily would suggest themselves, and the method employed in this instance in attempting to achieve such results seems to us only such as would reasonably have occurred to any skilled seamstress or artisan under similar circumstances.

In Patent Clothing Co. v. Glover, 141 U. S. 560, 12 S.Ct. 79, 81, 35 L.Ed. 858, where a patent had been issued for a reinforcement of the crotch in pantaloons, by means of a cloth check-piece or bridge, the court, in declaring the patent invalid, said that "surely the application of this reinforcing strip of cloth to any seam, or in any place where without it the tension would be solely on the threads, cannot be an exercise of the skill of an inventor."

■ Some of the claims on which plaintiff here sought to rely were directed to the

alleged cooperative action of the seat cushion and back cover-sections to form a patentable combination. The evidence conclusively indicated, however, that neither cover-section assisted in the performance of, or modified, the functions of the other, and that either could be omitted from the seat structure without interfering with the other's use or action. It could hardly be contended that the fact that the two sections' were sold and used as a set was evidence of their combinational patentability. The use of a number of unitary elements in combination, where each simply performs its customary function and unmodifiedly contributes to a mere aggregative result, does not constitute invention. Larx Co., Inc., v. Gibbs & Co., 8 Cir., 97 F.2d 924; De Lore v. St. Louis Lithopone Co., 8 Cir., 26 F.2d 864.

In holding plaintiff's patent invalid, we have not overlooked the evidence as to the volume of its slip cover sales. But the popularity and commercial success of an article are not important on the issue of patent validity, except where the question of invention hangs on the thread of doubt. King Ventilating Co. v. St. James Ventilating Co., 8 Cir., 26 F.2d 357; Frederick Stearns & Co. v. Grove's Laboratories, Inc., 8 Cir., 87 F.2d 822.

The argument is made in plaintiff's brief that the trial court, in determining the question of patent validity, without a finding on infringement, has impliedly held in plaintiff's favor on that issue. While the point is not important here, in view of the disposition that is being made, it should perhaps be remarked that we do not think the decree permits of such an implication. The invalidity of the patent compelled the dismissal of the bill of complaint, and, from the language of the decree, it is clear that the trial court deemed it unnecessary under the circumstances, and did not attempt, to determine any other question. In a patent infringement suit, where invalidity of the patent and non-infringement are both set up as defenses, and the trial court dismisses the bill of complaint on the ground that the patent is invalid, without presuming to pass upon the issue of infringement, and neither party makes a request for a finding on that question, the decree must be regarded as being wholly without implication on the issue.

In concluding, it may be noted that there was in fact no exact identity between de-fendant's cover structure and that of plaintiff. The matting which defendant chiefly used in its slip cover was woven of twisted paper strands and was flexible, so that the edge could be folded back on top of the matting section. No reinforcement strip was necessary or was used underneath such matting. The edge of the cloth that served as a valance and as a means of securing the cover to the cushion was simply folded under, and the natural hook thus formed in the material was inserted in the hook similarly created by folding back the top edge of the matting. The resulting four layers of material were then sewed together with two rows of stitching. At the time of the patent, Eddins was dealing with straw-matting and other inflexible material which could not be folded without breaking, and his reinforcement problem was therefore of a somewhat different character. While plaintiff had virtually abandoned the use of such brittle matting materials at the time of this suit, in favor of the improved flexible mattings which were then available, it continued to use the matting section without folding the edges, and with cloth reinforcement both on top and underneath the matting. It had, however, simplified the reinforcement operation by merely folding the edge of the valance fabric beneath the matting and then bringing the material back over the edge and onto the top of the panel, instead of using a separate strip of cloth underneath the matting section as indicated in the drawings and specifications of the patent.

If the trial court had undertaken to pass upon the question of infringement, it would have been obliged, of course, to give a narrow construction to plaintiff's rights, since no primary patent was involved, but only a secondary one for improvement features. Anakin Lock Works v. Dillon Lock Works, 8 Cir., 292 F. 45; Moon-Hopkins Billing Machine Co. v. Dalton Adding Machine Co., 8 Cir., 236 F. 936. And, if defendant's reinforcement structure was found to constitute, not a mere colorable evasion, but as much of an actual improvement over the features embodied in plaintiff's patent as the latter had represented over the prior art, no infringement would have existed though plaintiff's patent had been valid. But, since the trial court did not pass upon the question of infringement and a consideration of it is unnecessary to a determination of whether

604

the trial court's judgment should be upheld, we shall not discuss it further.

The bill of complaint was properly dismissed on the ground that the patent was invalid.

Affirmed.