27 C.C.P.A. (Patents)

## In re BUCKWALTER.
### Patent Appeal No. 4244.

Court of Customs and Patent Appeals.
March 4, 1940.

BLAND, Associate Judge, dissenting in part.

**812**

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

**LENROOT, Associate Judge.**

This appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting all of the claims of appellant's application for a patent, eleven in number. All of the claims were rejected as lacking invention over the cited prior art, and certain of the claims were additionally rejected upon the ground of being aggregative.

Claims 12 to 14, inclusive, and claims 16, 17, 35 and 36 are method claims, while claims 31 to 34, inclusive, are article claims.

Claims 12, 13, 16 and 31 are illustrative and read as follows:

"12. In the manufacture of axles, the steps which consist in elongating an intermediate portion of a tube and thereby reducing the thickness of the wall of said intermediate portion, elongating a part of each end portion of the tube and thereby reducing the thickness of the walls of such elongated portions and leaving spaced sections on each of said end portions having walls of substantially the thickness of the original tube.

"13. In the manufacture of axles, the steps which consist in elongating portions of a tube and thereby reducing the thickness of the walls of the elongated portions while leaving between the elongated portions wall sections having substantially the thickness of the original tube, and shaping the end portions of said tube to substantially rectangular cross section.

"16. In the manufacture of axles, the steps which consist in elongating an intermediate portion of a tube and thereby reducing the thickness of the wall of the elongated portion, shaping the end portions of said tube to substantially rectangular

cross section, aperturing the top and bottom walls of said end portions adjacent to the end thereof, inserting plugs in said apertures, bending and welding the side walls of said end portions against said plugs to form curved end closures, bending said tube longitudinally, and reaming said apertures and end closures to form king pin seats.

"31. An axle comprising an integral piece of tubing having substantially rectangular sections forming king pin seats and a section of drawn tubing, each of said rectangular sections having substantially parallel side walls and apertured top and bottom walls transverse to said side walls, said drawn tubing section being disposed between said rectangular sections and having a wall thickness less than said rectangular sections but a molecular elongation greater than said rectangular sections and the diametral distance between the top and bottom external surfaces of said drawn section being less than the distance between the top and bottom external surfaces of either of said rectangular section."

The references relied upon by the examiner and the board are: Duff, 1,574,563, February 23, 1926; Urschel, 1,690,511, November 6, 1928; Cross, 1,699,688, January 22, 1929; Mogford et al., 1,762,407, June 10, 1930; Urschel, 1,784,856, December 16, 1930.

 Other references were cited but none of them appear to have been discussed or applied by either the examiner or the Board of Appeals to any claims before us; therefore, only the references above named will be considered by us.

The Attorney for the Commissioner of Patents in his brief agrees that the description of the claimed invention found in appellant's brief is accurate. It reads as follows:

"This invention relates to automobile front axles of tubular, integral type having spring seats spaced from the tube ends and diametral sockets at the tube ends to provide seats for steering-knuckle king-pins extending transversely to the axle axis.

"Applicant's improvements consist essentially in providing in such an axle, four seat-forming sections from integral rings or hoops of greater perimetral size and of greater wall thickness than the three tube sections connecting the seats; such connecting sections being composed of drawn metal of greater molecular elongation, and

consequently of greater resiliency, than the metal of the seat sections. The central drawn section, viz., the section connecting the spring seats, is preferably of smaller perimetral size and lesser wall thickness than the outer drawn sections, viz., the sections which respectively connect a spring seat section with a king-pin-seat section; and these outer drawn sections are of notably less diameter than the height of the seat sections, as well as of lesser wall thickness."

With respect to the advantages of appellant's structure his application states: "As compared with an I-beam type of axle having a comparable strength to resist vertical loads or stresses, my improved axle has about four times the resistance to road shocks of such I-beam axle, its polar section modulus, which resist front wheel brake stresses, is about ten times stronger in the center section and about three and a half times stronger in the end sections than the I-beam type of axle, the weight of my improved axle is over 20% less than the I-beam axle and almost twice as many of my improved axles can be produced from a tube-mill of given capacity as have been heretofore ordinarily produced therefrom."

All of the method claims were rejected upon the reference Mogford et al. in view of the references Cross and Duff. Method claims 13, 14, 16, 17, 35 and 36 were also rejected as aggregative. Article claims 31 to 34, inclusive, were rejected on Urschel No. 1,784,856 and No. 1,690,511, and on the patent to Mogford et al.

The patent to Mogford et al. discloses a composite front tubular axle for automobiles. The patent states:

"In such tubular axles of the prior art the tubing is of the same section from end to end whereas in the axle made in accordance with the teachings of our invention the arms are upset from a region under the spring pads to the outer ends thus strengthening and stiffening the axle where the maximum bending moment occurs.

\* \* \* \* \* \*

"In carrying out our invention, we upset the ends of a tubular blank by endwise forging to give the desired strength to the arm under the spring pad and the part of the arm extending outwardly towards the wheels. Forged knuckle pieces are inserted in the end of the tube and secured therein by one of a number of ways, as, for example, by welding, forging pinning, or a combination of these actions.

"The axle is then formed to shape and the spring pads are welded in place. The spring pads are preferably made of sheet metal stampings, although for certain purposes forgings may be used."

The patent further states that the tube is initially two and one-fourth inches in diameter and has a wall thickness of approximately three-sixteenth inches; that the outer ends (termed "arms") are thickened by endwise upsetting at points lying within the spring seats, which lie a short distance from the extreme ends of the arms; that the "outer ends of the arms \* \* \* are reduced in diameter externally and are formed into the shape of tubular conical sockets \* \* \* the walls being brought to a maximum thickness at the inner ends of the sockets \* \* \*;" that the sockets receive the shanks of the knuckle pieces.

With respect to the method employed in forming the axle the patent states:

"The end of the tube is first swaged down as by rolling to taper the outer end \* \* \*. This results in a slight elongation of the blank and a slight thickening of the walls of the outer end which later forms the arms \* \* \*. This rolling down is preferably accomplished at each end either simultaneously or individually and is preferably done hot. The tube is then brought to a proper forging heat and is upset endwise to thicken the walls about the entire periphery of the part which is upset, at a point within the place where the spring seat \* \* \* is later attached.

"At the same time, or by subsequent operation, the upsetting of the outer end to form the socket \* \* \* is accomplished, the inside diameter of the socket being held to a definite shape by a mandrel and maximum wall thickness of the tubular blank being produced just back of the socket \* \* \*."

The drawings of the patent clearly indicate that the tube is of uniform external diameter, except at the extreme ends where it tapers to its smallest diameter.

The Urschel patents were not mentioned by the board, but were apparently relied upon by the examiner only for the purpose of establishing that the shaping of the ends to rectangular form, aperturing them to receive pins, bending in the sides and cutting to rounded form, were conventional, and that the recital of these steps in some of the claims before us could not lend patentability thereto.

Appellant's counsel do not challenge this view, and rely upon the above steps only as a part of the combination claimed. We would observe, however, that each of these patents states that the cross-sectional area of the ends of the axle is considerably less than the cross-sectional area of the tube from which it is formed.

The patents to Duff and Cross relate to metallic structures of forged or rolled plate such as poles, masts, retorts, pipes, etc. The patent to Duff states:

"An important object of the present invention is to provide a structural unit having the metal constituting its body disposed to give maximum strength for the particular purpose which it serves together with a minimum weight.

"Another object of the present invention is to produce a malleable metal structural unit having its width, its thickness, or both its width and thickness progressively, uniformly, intermittently or otherwise varying throughout the length thereof."

The patent to Cross discloses a method of forging an ingot to a predetermined length and diameter and leaving end portions having a greater wall thickness than other parts of the article.

We will first consider the article claims, numbered 31, 32, 33, and 34. The ground of rejection of these claims by the examiner was stated by him as follows: "Claims 31 to 34 for the article stand rejected on Urschel 1,784,856, Urschel 1,690,511, and Mogford. The patent to Urschel 1,190,511 [1,690,511] shows the formation of the king pin receiving ends and spring seats of square section while the remainder of the axle is round. These square sections are further of greater thickness than the intermediate sections. No. 1,784,856 shows the specific formation of the end portions by rounding the top and bottom and folding in the sides. Mogford shows the variation in wall thickness for the same purpose and in the same places as in applicant's structure. The thickening of the ends and spring seats in the Mogford structure is accomplished by upsetting said portions so that they are thicker than the intermediate portion whereas applicant draws the intermediate portions so that they are thinner than the square portions. The result in the finished article is however the same."

The Board of Appeals did not separately consider the product and method claims, but with respect to both in its decision stated:

"Mogford et al. disclose a tubular axle having thicker walls at the points where the springs rest and also at the end portions but in that patent the tube was originally longer than the completed axle. The thickened portions were caused by upsetting.

"We consider that the only question which is of sufficient importance to require discussion is whether it was unobvious to form an axle by appellant's general method instead of that of Mogford et al. It is well-known that the thickness of portions of metal stock may be reduced by elongation while other portions are permitted to remain in the original condition. Cross and Duff are examples of this practice. While it is true that the articles disclosed in these patents are quite far afield from axles, we regard them only as illustrations of a well-known metal-working process and in our opinion it would be obvious and merely a matter of choice to those skilled in the metal-working art to employ appellant's method rather than that of Mogford et al. We recognize, of course, that there are advantages in appellant's process and also that perhaps the product may be better than that of Mogford et al. We believe, however, that no unobvious or unexpected result flows from appellant's procedure."

It is clear to us that Mogford et al. disclose the same variation in thickness of the walls of the tube as are disclosed by appellant, and that Urschel No. 1,690,511 shows rectangular sections forming king pin seats. None of the references, however, disclose these king pin sections of larger cross section and wall thickness than the intermediate sections of the axle.

It was the view of the board that the process disclosed by Mogford et al. would normally result not only in thicker walls but also larger cross section at these points than in the intermediate sections of the axle. This view is sharply challenged by appellant's counsel and we are inclined to agree with him for it appears to us from the drawings of Mogford et al., supplemented by the written specification, that the patentees never contemplated that the external diameter of the axle should not be uniform. However, as we construe the decision of the board, it is to the effect that it would be obvious to one skilled in the art

that the axle would be stronger if the enlargement of the spring seat sections and king pin sections were allowed to occur, and therefore this difference between appellant's product claims and the disclosure of Mogford et al. does not lend patentability to said claims of appellant.

In this view we cannot find that the board erred. It is the general rule that there is no invention in merely producing added strength, and that ordinarily the application of reinforcing the devices to a structure does not involve invention. In re Campbell, 48 F.2d 915, 18 C.C.P.A., Patents, 1351; In re Pomeroy, 64 F.2d 681, 20 C.C.P.A., Patents 1026.

For the reasons stated we hold that the Board of Appeals committed no error in holding that the product claims were unpatentable.

We next come to the consideration of the method claims, numbered 12 to 14, inclusive, 16, 17, 35 and 36. It will be observed that in claim 12, hereinbefore quoted, the steps enumerated are: (1) "elongating an intermediate portion of a tube and thereby reducing the thickness of the wall of said intermediate portion;" (2) "elongating a part of each end portion of the tube and thereby reducing the thickness of the walls of such elongated portions;" and (3), as a result of the foregoing steps, "leaving spaced sections on each of said end portions having walls of substantially the thickness of the original tube."

It is not asserted by any of the Patent Office tribunals, or by the Attorney for the Commissioner of Patents, that the patent to Mogford et al., or the patents to Urschel, either alone or combined, disclose the process claimed, but reliance is placed upon these patents in connection with the patents to Duff and to Cross to negative patentability of the method claims.

The Duff and Cross patents concern articles not analogous to axles, and while it is true they disclose a method of reducing the thickness of portions of metal stock by elongation while other portions are permitted to remain in their original condition, the purpose being to make a part thick where the stress requires strength, and making it thin where there is lack of stress, it does not in our opinion follow that there is no invention in applying this general teaching to a particular structure such as is here involved. The problem before appellant was very different from the problem before Duff and Cross. As stated in appellant's

brief, " * * * nowhere is it proposed that four projecting hoops of greater wall thickness be produced on a tube blank at specially spaced portions along its length by rolling a central section and two outer sections of the blank spaced from the ends so as to effectively distribute the mass of the metal and to shape the different sections of the metal proportionately to the strains which they are to bear. * * *"

We do not think that, with the references before him, it would be obvious to one skilled in the art to adopt the method set forth in claim 12 to produce a front automobile axle. Certainly this method does not seem to have occurred either to Mogford et al. or to Urschel, whose applications for patents were filed more than two years after the patent to Duff was issued. The Board of Appeals in its decision recognized that there are advantages in appellant's process, and that the product produced by that process may be better than that produced by the Mogford et al. process.

Mogford et al. produced varying thicknesses in the tube by upsetting the ends thereof, while appellant elongates intermediate portions of the tube to produce varying thicknesses. Appellant's improvement may now seem simple, but under all the circumstances we are of the opinion that appellant's process involved the exercise of the inventive faculty and that claim 12 should be allowed.

With respect to claims 13, 14, 16, 17, 35 and 36 the examiner, in addition to rejecting them upon the cited prior art, also rejected them upon the ground of aggregation. In his decision he stated: "Claims 13, 14, 16, 17 and claims 35 and 36 add, in various degrees of detail, the shaping of the ends to rectangular form, aperturing them to receive pins, bending in the sides and cutting to rounded form. This is a conventional method of forming the ends and is shown by Urschel patents No. 1,-690,511 and No. 1,784,856. It has no coaction whatever with the specific method by which the intermediate portion of the axle was formed. Clearly the step of forming the ends would be exactly the same whether the axle was formed by upsetting a thin blank or rolling down a thick one. For this reason, claims 13, 14, 16, 17, 35 and 36 have been further rejected as aggregative."

In the case of In re Hueber and Horton, 70 F.2d 906, 907, 21 C.C.P.A., Patents, 1112,

we said: "The distinction between a patentable combination and an aggregation has been the subject of much discussion by the courts, and is oftentimes a troublesome question. * * *"

In the case of In re Herthel, 104 F.2d 824, 827, 26 C.C.P.A., Patents, 1423, which involved claims for an oil cracking process, we said:

"It is our opinion that each of the involved claims constitutes more than an aggregation of elements; that is, there is coaction between several of the elements of each of the claims, and the mere fact that the two secondary cracking steps do not coact with each other, although contributing to the unitary result, does not warrant a holding that the claims are aggregative.

"It seems to us that appellant's process as claimed must, on the record before us, be presumed to have advanced the art of production of gasoline from high boiling petroleum oil, and in view of the holding of the Board of Appeals (as we construe it) that the claims would be allowable if not aggregative, we do not think that appellant should be deprived of a patent upon the mere fact that the two secondary cracking steps do not coact with each other. They do each coact with the primary cracking step, and we think that this is sufficient to prevent a holding that the claims are aggregative.

 Claim 13 adds to the steps enumerated in claim 12 the step of "shaping the end portions of said tube to substantially rectangular cross section." Claim 14 adds to the steps enumerated in claims 12 and 13 the step "and bending walls of said rectangular sections to form curved end closures." Claims 16 and 17, in addition to the steps named in claims 12, 13, and 14, enumerate a number of conventional steps in completing the axle. With regard to this group of claims it seems to us, although the question is a close one, that claim 13 should not be considered aggregative and is allowable for the same reason that we hold claim 12 allowable. The shaping of the end portions of the tube to substantially rectangular cross section is intimately connected with appellant's process. Claim 13 is narrower than claim 12 by reason of the limitation embodied in the last step of claim 13.

With respect to claims 14, 16, and 17, we hold that there is no coaction between any of the additional steps named

therein and the steps enumerated in claims 12 and 13, and that they are wholly conventional and unrelated to appellant's invention.

Regarding claims 35 and 36, they are similar in scope to claims 12 and 13, the process being merely recited in greater detail, and we are of the opinion that they are allowable, together with claims 12 and 13.

For the reasons herein stated, the decision of the Board of Appeals is affirmed with respect to claims 14, 16, 17, 31, 32, 33 and 34, and reversed with respect to claims 12, 13, 35 and 36.

Modified.

BLAND, Associate Judge (dissenting in part):

I think the decision of the Board of Appeals was not erroneous and should be affirmed, and I dissent from the decision of the majority in reversing the board with respect to claims 12, 13, 35 and 36.

As to the action of the majority in affirming the rejection of claims 14, 16, 17, 31, 32, 33 and 34, I concur in the conclusion.