242

## GARDNER v. BUXTON, Inc.

### BUXTON, Inc., v. GARDNER (two cases).

#### Nos. 12825–12857.

Circuit Court of Appeals, Eighth Circuit.

June 28, 1945.

See, also, 2 F.R.D. 351.

John D. Rippey, of St. Louis, Mo., for Leah L. Gardner, individually and as representative of Prince A. Gardner.

Edmund C. Rogers, of St. Louis, Mo. (Robert P. Harvey, of Springfield, Mass., Chapin & Neal, of Springfield, Mass., and Kingsland, Rogers & Ezell, of St. Louis, Mo., on the brief), for Buxton, Inc.

Before GARDNER, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The action is one for infringement of a number of patents on improvements in key cases or containers, brought by Buxton, Incorporated, against Prince A. Gardner, Jr., and Leah L. Gardner, his wife. Gardner was the owner of the business which was doing the alleged infringing, but his wife was conducting the business under a general power of attorney, because of his incapacity. Following the decree in the trial court, Gardner was declared incompetent by a Missouri probate court, and his wife was appointed his legal representative, and as such she has now been substituted for him in these appeals.

Buxton alleged infringement of five patents, of which it was the owner—Buxton No. 1,561,906, Buxton No. 1,691,637, Buxton No. 1,922,755, Howe No. 1,959,207, and Buxton No. 1,966,429. The accused key cases were being manufactured under patents Koelling No. 2,201,833, and Dawson No. 2,201,851, of which Gardner was the owner.

The trial court held that the Gardners had infringed on claims 1, 4 and 6 of Buxton No. 1,561,906, and on claims 1 and 2 of Buxton No. 1,966,429, all of which claims it declared to be valid, but that there was no infringement of Buxton's other three patents.

Appeal No. 12,825 is by the Gardners from the decree of infringement on the two patents. Appeals Nos. 12,856–7 are by Buxton from the denial of infringement on its other three patents. The questions on the several appeals will be considered in the order of the numbers of Buxton's various patents.

#### Buxton No. 1,561,906.

It is the contention of the Gardners that the trial court's finding that the three claims of this patent were valid and infringed is clearly erroneous. The first question that requires consideration therefore is the validity or patentability of the claims.

On the aspect that is here involved, claim 6 may be treated as typical. It reads: "The combination with a key case, of a supporting member of hollow substantially cylindrical form secured thereto and provided with a plurality of substantially transverse slots, a plurality of key retain-

ing members each having near one end a part to slide in one of said slots and shoulders above and below said parts to engage the inner and outer walls of said supporting member adjacent said slots, whereby each retaining member is free to swing about the axis of the supporting member, and an enlargement provided in each slot at one point to permit the upper shoulder of the key retaining member to pass into and out of the interior of said supporting member."

Prior to this patent, there had been key cases in the art, consisting of a leather folder, with a metal plate secured to its back panel, the upper part of which plate had been slotted and then rolled forward into a cylindrical shape, with key hangers, having a widened head, inserted in the slots and capable of being swung or rotated about the cylinder. See Bowen No. 1,404,-736. The element which Buxton No. 1,-561,906 added to this combination, within the issue here involved, was an enlargement of the opening at the tip of each slot, so as to form with the slot, when the plate was cut, an inverted keyhole, through the enlarged opening of which the head of the key-hanger could pass and allow the hanger to be taken out of or inserted in the rolled cylinder, as desired.

■ How the concept of enlarging the opening at the tip of these previous slots, in order to enable the head of the hanger to pass through, can be said to rise to the height of invention and to create the right to a patent monopoly, it is difficult to see. The patent-office examiner, as a matter of fact, initially took the position that this was not invention. In a communication to the applicant, which is part of the file wrapper, he declared, "It is a common and obvious mechanical expedient to remove a member from a slot through an enlargement which is connected with some part of the slot." He re-asserted this view in another communication, in response to a request by the applicant for reconsideration, and said, "To enlarge one portion of a slot to permit withdrawal or insertion of a member through the slot is believed to be an obvious expedient in any art." But, by those erosive and mind-grooving processes of unyielding reiteration of concept and ready prestidigitation of words, which seem to be so much a part of the patent-obtaining game, the resistance of the examiner was apparently finally worn down, and he allowed the claims.

■ We think it obvious, as the examiner originally declared, that to enlarge one portion of a slot to permit withdrawal or insertion of a member through the slot is a common expedient and concept in the mechanical field. Buxton points out here, as the file wrapper shows it also was suggested to the patent office, that the enlargement at the tip of the slot produced "the new and useful result of being able to remove the key holder readily from the support." The applicant in his correspondence with the patent office had urged that "The key hole slot is the means to the end and, while it is used in other arts, its application to the key case art is new and by its use a new and useful result is effected." But the mere application of a common expedient to an ordinary use in another art, especially where it has not been clearly demonstrated that a recognized problem has existed in the immediate field and has defied previous solution, is not generally invention. Cf. Permutit Co. v. Graver Corporation, 284 U.S. 52, 60, 52 S.Ct. 53, 76 L.Ed. 163. The Supreme Court has only recently again emphasized that "He who is merely the first to utilize the existing fund of public knowledge for new and obvious purposes must be satisfied with whatever fame, personal satisfaction or commercial success he may be able to achieve. Patent monopolies, with all their significant economic and social consequences, are not reserved for those who contribute so insubstantially to that fund of public knowledge." Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 65 S.Ct. 647, 650.

■ In this connection it may be pertinently observed that the concept of enlarging the tip of the slots in a key case, to permit withdrawal or insertion of the hangers, as was said of the patent in Sinclair & Carroll Co. v. Interchemical Corporation, 65 S.Ct. 1143, 1146, "was not the product of long and difficult experimentation." And, as in Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., 8 Cir., 148 F.2d 497, 502, it could not be claimed to have "solved any serious problem which had baffled solution." Indeed—though the point is of no importance in the result here—an examination of the working model of the patent, which is an exhibit in the case, suggests that any attempted commercial use of the device, as it stood under the patent, would probably have created more difficulty than utility to a key-case owner, because of the danger of the hangers being

shaken from the slots, through the enlargements, when the case should be inverted in use. And, as a matter of fact, no attempt was apparently made to put the concept into commercial use, until after practical means had been devised through other patents (which we shall consider later) for avoiding this hazard. But, without regard to the observation which has just been made, we are unable, as previously suggested, to see how the mere concept of enlarging the opening at the tip of the slots, to permit removal or insertion of the key-hangers, can be regarded as constituting the play of the inventive faculty or as representing anything more than the exercise of such mechanical skill as is reasonably and naturally entitled to be expected from those engaged in the art. It is, of course, not invention, as has been many times said, "to produce a device which a skilled mechanic would produce when required to effectuate a given result." Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., supra. "Strict application of that test is necessary lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art." Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 92, 62 S.Ct. 37, 41, 86 L.Ed. 58. The trend of the decisions of the Supreme Court in recent years leaves no room, in our opinion, for any patenting of the simple concept or device that is here involved, in its application to the key-case field.

The trial court's decree as to Buxton No. 1,561,906, on the claims before us, is accordingly reversed, with directions to declare the claims invalid.

Buxton No. 1,691,637, Buxton No. 1,922,755, and Howe No. 1,959,207.

As to each of these patents, the trial court held that there had been no infringement by the Gardners, and Buxton has appealed from this part of the decree. Our consideration therefore will be limited to the question of infringement.

All of the three patents, in the aspect that is here material, sought to provide means of mechanically blocking the enlargements at the tip of the slots, which would prevent the accidental dislodging of the hangers and yet permit their removal through the enlargements, when desired.

Buxton No. 1,691,637, under the claims that are relied on in this appeal, read in relation to the description and patent drawings, made provision for two metal plates, one of which was fastened to the center panel of the leather folder and had its upper and lower edges curled, so as to form a horizontal track or slideway for the second. Part of the second plate was bulged out into a semi-cylinder, in which were located the hanger-slots, with their tip-enlargements. The upper edge of the first plate contained indentations at spaced intervals, with which the slot-enlargements in the second plate could be slid horizontally into register, so as to permit removal or insertion of any of the key-hangers. When the second plate was slid back into normal position, the unindented portions of the upper curled edge of the first plate served to block the slot-enlargements. Claim 8 may be here treated as typical: "A key holder support, comprising interengaged and relatively shiftable parts by which the key holders are supported for swinging movement, one of said parts having openings through which the key holders may be removed, the other part when in one position serving to cover said openings and when shifted to another position to uncover the same, and means resisting relative shifting of said parts and tending to hold the last named part in the first named position."

Buxton No. 1,922,755 purported to be an improvement in the means of blocking the enlargements at the tip of the slots and of permitting removal of the key-hangers. In substance, it employed the prior art structure, as referred to in connection with Buxton No. 1,561,906, supra, with an enlargement at the tip of each slot, and inside the cylinder of this structure it placed a smaller cylinder, with similar slots and enlargements, which could be rotated by a lever (which in the working model of the patent was extended and bent back over the outer cylinder) so as to cause the slot-enlargements in the two cylinders to be put in register and thus permit the hangers to be removed. By again rotating the inner cylinder to bring the enlargements out of register, the removal of the hangers would be blocked. Claim 8, which is alleged to be infringed, is as follows: "The combination in a key case, of a support for the key holders having a plate-like part secured to the key case and a hollow cylindrical portion, said portion having transverse slots with an enlargement at one point in each, key holders one for each slot each having a head of a size to pass freely through the enlargement in its slot but not

through the slot itself and a shank to swing freely in the slot, a member separate from said plate movably mounted within said cylindrical portion and bodily shiftable relatively thereto and independently of the key holders from one position to another to prevent or permit passage, respectively, of the heads of the key holders through said enlargements, and an actuating part connected to said member and extending outside said cylindrical portion to enable said member to be manually shifted."

Howe No. 1,959,207 similarly represented an attempt to improve the means of blocking the slot-enlargements and of facilitating removal of the key-hangers. It employed a metal plate, part of which was rolled into a cylindrical shape, as in the prior art structures, with the usual hanger-slots having an enlargement at the tip, and a smaller metal plate or bar which would slide into the cylinder, with its upper edge partially rolled to conform to the shape of the cylinder, and with spaced grooves or indentations therein, as in one of the plates in Buxton No. 1,691,637, which could be brought into register with the enlargements of the hanger-slots, on horizontal movement of the bar. Different than in Buxton No. 1,691,637, however, the key-hanger slots were located in the stationary plate instead of in the sliding bar. When the bar was returned to its normal position, the slot-enlargements were blocked. In the later commercial product, a small spring was added to the structure to pull the bar automatically back into normal position, when the finger-hold on it was released. Claim 2 may be here treated as typical: "A key holder support, comprising a tubular portion having a substantially semi-cylindrical front wall and a fixedly connected back wall substantially closing said portion and projecting therebeyond in plate-like form, said front wall having a transverse slot with an enlargement therein at the upper end thereof, a key holder the shank of which is of a size to move freely in said slot and the head of which is of a size to pass freely through the enlargement but not through the slot, and a member slidably mounted and guided on the projecting part of said back wall and extending into the tubular portion and entirely along the back wall thereof and having a projection to cover said enlargement sufficiently so as to prevent passage of said head therethrough, said member

being shiftable to withdraw said projection from covering relation with said enlargement and enable said head to pass through the latter."

The accused structure, which, as we have indicated, was being manufactured under Koelling No. 2,201,833 and Dawson No. 2,201,851, of which Gardner was the owner, did not employ either a horizontally sliding plate as in Buxton No. 1,691,637 and Howe No. 1,959,207, or an inner revolving cylinder as in Buxton No. 1,922,755, but was provided with a vertically-rocking bar or plate placed inside the tube and covering the slot-enlargements. The bar was not indented and no part of it had to be brought into register with the enlargements in order to effect removal of the key-hangers. The enlargements were located in the top portion of the tube or cylinder, and the rocking bar or plate extended across them. Part of the rear edge of the bar was projected into the back of the structure-plate, but with sufficient play or tolerance to permit the bar to be rocked downward away from the openings, and thus to unblock them. Another metal strip was made to extend along the inner backside of the structure-plate, with its top part bent right-angularly outward, so it would rest under the rocking bar and serve as a support and a guide. When the rocking bar was pressed downward by means of a finger lever, the support and guide strip would also move down, but, upon release of the finger lever, the support and guide strip would be forced upward by a spring and would cause the rocking bar automatically to be returned to its blocking position. The device also had the practical convenience or advantage over Howe No. 1,959,207 (as well as over Buxton No. 1,-691,637 and Buxton No. 1,922,755, of course) that the finger lever could be made to operate the rocking bar, by pressing against it through the leather of the closed case, and so permit the removal, if desired, of a hanger which had been swung outside the case, and further that a hanger which had been previously removed could be re-inserted in the structure-plate, without opening the case or even using the finger lever, by merely pressing the head of the hanger down against the rocking bar, through one of the enlargements.

We agree with the trial court that the accused structure was not an infringement on either Buxton No. 1,691,637, or

Buxton No. 1,922,755, or Howe No. 1,959,207. In the claim-aspects that are here entitled to consideration, all of these patents, as previously indicated, had simply attempted to provide practical means of blocking the slot-enlargements, while still leaving it possible conveniently to remove the hangers from the key-case structure. Buxton ingeniously attempts to commence its argument here with a discussion of Howe No. 1,959,207, and in an effort to obtain a liberal interpretation and application of the claims of that patent asserts that "there is no art on these features worthy of the name ahead of Howe." The purpose of the other patents which Buxton itself held and the nature of all the devices involved cannot, however, that lightly be brushed aside, in order to give the Howe claims a preemptive position and a broad construction as a means of blocking the slot enlargements.

Buxton No. 1,561,906, in addition to its invalid patenting of the slot-enlargements as part of a key-case structure, as heretofore discussed, appears also to have claimed invention rights on means of blocking the enlargements to prevent accidental dislodging of the hangers. Claim 5 uses the language, "the enlargement in the slot being so located as to be normally covered by and concealed by a portion of the case forming member", and claim 7 refers to "said entrance being inaccessible for insertion or removal of keys in said loop except when removed from said supporting member." The drawings and specifications place the enlargements in the slots of the plate-structure against the back panel of the leather folder, which, it is said in the description, "is flexible and can be bent back to gain access to the opening." Whether this blocking concept or device could be regarded as patentable is not here before us, but in any event it apparently did not have any commercial utility or value.

The next step or development in the blocking-field, as it probably logically might be expected to be, was a crude mechanical sliding device, which was the subject of Buxton No. 1,691,637. Then followed the more complicated rotative cylinder device of Buxton No. 1,922,755, which perhaps required too much observation and effort to roll the enlargements out of register to be commercially practical. Thereafter came Howe No. 1,959,207, which ap-

plied the sliding concept of Buxton No. 1,-691,637, but reversed part of the composition of its structure, by placing the slots and hangers in the stationary instead of on the movable plate.

In a field of this character, with its history, and from the nature of the device involved, neither Howe No. 1,959,207 nor Buxton's other patents, occupy the position or rank of a pioneer invention, as that term is entitled to be used. See Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 561, 562, 18 S.Ct. 707, 42 L.Ed. 1136. None of them certainly was such an invention as could create a broad monopoly against every form of inner member in a key-hanger cylinder that might in any way be movable to block and unblock the slot-enlargements. Each was a step forward in the art, but not such an advance as would entitle its claims to anything more than a narrow construction. Cf. Landry Mfg. Co. v. C. P. Rockwell, Inc., 1 Cir., 45 F.2d 89, 90; Evr-Klean Seat Pad Co. v. Firestone Tire & Rubber Co., 8 Cir., 118 F.2d 600, 603.

We have heretofore described generally the mechanical structure and mode of functioning of both Buxton's devices and the accused device. Within such narrow construction as the claims of Buxton's various patents were entitled to receive in the field of equivalents, the accused device did not infringe, for its functioning did not depend upon the bringing of the slot-enlargements into register with a corresponding opening in some other part of the structure; its rocking bar did not achieve its unblocking result by the same kind of movement; and the mechanical construction and principle of the blocking device were impressively different.

The trial court's decree holding Buxton No. 1,691,637, Buxton No. 1,922,755, and Howe No. 1,959,207 non-infringed is affirmed.

### Buxton No. 1,966,429.

The trial court held that claims 1 and 2 of this patent (which were all of its claims) were valid and had been infringed, and the question therefore arises on the Gardners' appeal.

The patent in effect was an attempt to claim a monopoly on the location of the snap or fastener on a key-case cover, between the lower edge of the structure-plate and the lower tip of the key-hangers. Part of its recitation states: "A single pair of fastener elements have been used hereto-

fore for securing together the flaps of a key case but they have always been centrally applied to the flaps i. e. half way between the upper and lower edges thereof, and cannot accomplish the results of this invention. Two pairs of such fasteners have also been used, one pair near the top and the other near the bottom." The invention claimed was that, by locating the single fastener between the lower edge of the plate-structure and the point of greatest bulk created by the heads of the keys on the hangers, the bulging of the keys would not be able to cause the upper half of the cover to be pivoted on the fastener and to spread outward, and "the keys are effectually bound in place and prevented from falling out or being shaken out from the open upper end of the key holder."

The location of the snap or fastener at a point on the cover between the lower edge of the structure-plate and the lower tip of the key hangers did prevent the upper part of the key-case cover from spreading through the pivoting of the flaps on the engaged snap or fastener, and thus accomplished a useful result. But that result was the simple solution of an elementary problem in the field of force in physics, and its answer was not the invention of a patentable device. It was nothing more than the locating, through ordinary experimentation, of which any physics student who examined the problem would be capable, of the most effective point of curbing or counteracting the bulging force of the hung keys. It was a contribution to key-case convenience but certainly not the solution of what was entitled to be called a baffling problem or the invention of a patentable device. The patent claims seek to establish a monopoly in the key-case field on the location of any type of "interengageable means on said flaps for fastening them together in overlapping relation at one point only" anywhere between the lower edge of the structure-plate and the lower tip of the key-hangers. As well might the tailor, who in his fitting operations searches out the best location for a button on a double-breasted coat, in order to prevent the "pivoting" and spreading of its lapels and collar on the bulging male figure and his over-stuffed inside pocket, claim the right to exact invention tribute.

The trial court's decree as to Buxton No. 1,966,429 is reversed, with directions to declare the claims invalid.

The result reached on the various patents makes unnecessary any discussion of the other questions presented.

In appeal No. 12,825, the decree of the trial court is reversed, and in appeals Nos. 12,856–7, it is affirmed.