44 C.C.P.A. (Patents)

**Application of Walter A. SCHULZE and William B. Reynolds.**

**Patent Appeal No. 6256.**

United States Court of Customs and Patent Appeals.

May 7, 1957.

J. Arthur Young, Donald J. Quigg, and L. Malcolm Oberlin, Bartlesville, Okl., for appellants.

Clarence W. Moore, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before JOHNSON, Chief Judge, and WORLEY, RICH and JACKSON, retired, Judges.

RICH, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, affirming the final rejection by the examiner of claims 24, 25 and 26, all the claims remaining in the case, application serial No. 219,766, for "Elastomer Compounds and Improved Compounding Process Therefor." Claim 26 is illustrative and reads as follows:

"The method of making a mass of polymeric material vulcanizable to a rubber-like state comprising forming an emulsion of monomeric material consisting of a major portion of butadiene and a minor portion of styrene; polymerizing said monomeric material in said emulsion at a temperature below 15°C., the resulting polymer having a raw Mooney (ML–4) [value] of at least 90; adding to a latex of said polymer a hydrocarbon softener as a dispersion in water, said softener being added in an amount of between 15 and 50 parts by weight per 100 parts by weight of rubber; and recovering resulting softened polymer."

Appellants state that the other two claims differ only in the definition of the

monomeric starting materials, a matter of no importance here.

Appellants present the essence of the claimed invention to us in the form of the following four steps which, they say, constitute a "true combination" not suggested by the prior art:

"(a) Maintaining the polymerization temperature below 15°C. (59°F.);

"(b) Producing a polymer having a raw Mooney value (ML–4) of at least 90;

"(c) Adding a hydrocarbon softener to the latex as a dispersion in water;

"(d) Adding the softener in an amount of 15 to 50 parts by weight per 100 parts by weight of rubber."

The references relied upon are:

Sarbach 2,325,982 Aug. 3, 1943; Ind. & Eng. Chem. (I), Vol. 40, No. 5, pages 769–777 (May 1948), article by Shearon et al.; Rubber Age (I), Vol. 64, No. 4, pages 459–464 (Jan. 1949), article by Howland et al.; Ind. & Eng. Chem. (2), Vol. 41, No. 8, pages 1584–1587 (Aug. 1949), article by Smith et al.; Rubber Age (2), Vol. 54, No. 5, pages 423–427 (Feb. 1944), article by O'Connor et al.

For a better understanding of this "method of making a mass of polymeric material vulcanizable to a rubber-like state", we shall discuss it in terms of the steps (a) through (d) as presented by the appellants.

(a) This invention is in the field of so-called "cold rubber" which is a type of synthetic or "chemical" rubber. Such rubber is made by the copolymerization of various monomers, in this case a conjugated diolefin and another polymerizable comonomer. The two materials specified in claim 26, supra, are butadiene and styrene. They are polymerized together in an emulsion wherein long chain molecules are formed, characteristic of rubber-like materials. The references disclose that this type of synthetic rubber, known as "GR–S" was made during the war at a standard polymerization temperature of 122°F. At a later date processes were developed for carrying out the polymerization at much lower temperatures, sometimes referred to as refrigerated polymerization. Temperatures given in the references are 41°F., 14°F., 0°F. and 5°, 2° and –18°C. All of these temperatures, it will be seen, are within the claims which, in effect, call for a cold rubber process in which there is no novelty *per se.* Cold rubber has been found to possess certain advantages. As is stated in Ind. & Eng. Chem. (2), (1949), "The field of low temperature-polymerized latex is in a state of rapid development * * * There are many areas yet to be investigated in the refrigerated latex field."

(b) The claims call for the production of a polymer which has a "raw Mooney value (ML–4) of at least 90". This may be explained by quoting appellants' brief:

"* * * This raw Mooney value is essentially a measure of the toughness and processability of the synthetic rubber material. On one hand, the defined Mooney value of 90 or higher represents a rubber which is quite tough and difficult to process, as compared to conventional rubbers which have Mooney values ranging from 50 to 65. On the other hand, polymers having a high Mooney value of 90 or over excel in certain important physical properties, such as tensile strength and percentage elongation.

"The phrase 'ML–4' designates a particular test used in determining the Mooney value of the rubber wherein a large 1½ inch diameter rotor is used in conjunction with a test time of four minutes, the test being conducted by placing the material between the rotor and two stationary parts provided with an array of sharp points to hold the rubber. As the rotor turns, the rubber exerts an opposing torque which is measured, and the shearing strength is determined."

This is not a novel feature of the process since the references disclose a wide range

of cold rubber Mooney (ML–4) values, as high as 140. What appellants have to say on this point, after the explanation quoted above is this:

> "In appellants' claimed combination, the product has the desirable physical properties associated with tough high Mooney synthetic rubber, but the material is still not too tough to process because of the addition of the softener ingredient, and actually is unexpectedly superior in heat build-up as has been previously explained."

Heat build-up means temperature rise in a sample when repeatedly flexed. It is obviously advantageous in some rubber uses, tires for example, to have low heat build-up.

The examiner was not persuaded by appellants' test results, as set forth in the specification, that there was any surprising or unexpectedly superior improvement in heat build-up characteristics from this invention. Neither was the board. We are of the same opinion. This is the one alleged advantage on which appellants place the most weight in their arguments.

(c) The use of hydrocarbon softeners in cold rubber is clearly disclosed by Ind. & Eng. Chem. (1), an article devoted to the subject of cold rubber. It specifically names several hydrocarbon softeners in cold rubber formulae. This is, therefore, a type of softener for this type of rubber which is clearly taught by the prior art.

The claims call for the addition of the softener to the latex as a dispersion in water. The prior art of record discloses two generally recognized ways of adding compounding ingredients to synthetic rubber, softener being such an ingredient. One is to add them to the rubber while it is being worked on a roll mill and the other is to add them to the latex, prior to the coagulation and milling steps, in the form of an aqueous dispersion. Appellants elected to use, and to claim, the latter well known procedure. Clearly, there is nothing in step (c)

which is novel. Rubber Age (2) describes "Latex Compounding of GR–S" even before the development of cold rubber as a desirable expedient.

(d) Finally, there is the matter of the quantity of softener, 15 to 50 parts by weight per 100 parts by weight of rubber. Ind. & Eng. Chem. (1) says (p. 771), "In order to make high Mooney rubbers processable, it is necessary either to add softeners or to give the rubber mechanical treatment." And again, "Increasing the Mooney value of the raw polymer does not improve the abrasion resistance if sufficient softener is added * * *". And, in specific examples, it gives 10 parts of softener. Added to this is the teaching of the Sarbach patent which discloses "a new class of softeners for synthetic rubber." One such rubber mentioned in the patent is a copolymer of butadiene and styrene, the same as appellants' except for the fact it is not made by cold polymerization, a process not yet developed when the patent application was filed. It contains this teaching for the synthetic rubber art:

> "The amount of the softener added will depend upon the properties desired in the composition and upon the nature of the rubber treated, the rubber and the softener being compatible over a wide range of proportions. In commercial operations it will ordinarily be expedient to employ from about 10 to 60 parts by weight of the softener for each 100 parts of synthetic rubber but amounts smaller or larger than this ranging from 1 to 100 parts of softener for 100 parts of synthetic rubber are also effective."

Apropos of element (c) of the claim, the patent also suggests that "adding the softener to an emulsion or dispersion of the synthetic rubber" (i. e. to rubber latex) is a desirable way to incorporate it.

Appellants lay great stress on the *combination* aspect of their claimed invention and the "concert of action" and "cooperative relationship" which exist

44 C.C.P.A.Patents

between the four limitations discussed above, (a) to (d). It is their contention that even if each element is old *per se,* it was patentable invention to assemble this particular group of elements. They also complain of the rejection on five references no one of which teaches the entire combination.

Our view on these points, having read all of the references carefully, as a worker in the art must be presumed to have done, is that steps (a) and (b) amount to no more than the selection of existing "cold rubbers" having a Mooney value (ML–4) above 90 and that steps (c) and (d) amount merely to a determination of the range of known softeners to be added, and the best of two recognized ways of adding them, to obtain whatever results may be desired. If the skilled worker in the art is attempting to obtain optimum heat build-up, he would as a routine matter select the combination of rubber, softener and method of addition to produce it. That experimentation would be required to find that combination, in which of course all factors cooperate or act in concert, does not make the result patentable where, as here, it clearly follows the suggestions of the prior art.

In view of the teachings of the references and the level of knowledge they indicate is to be expected of the "person having ordinary skill in the art" (35 U.S.C. § 103) with respect to how much softener to add to synthetic rubber, by whatever process made, and how to add it, we are of the opinion that the alleged invention claimed is in the realm of the obvious.

The decision of the Board of Appeals is therfore affirmed.

Affirmed.

O'CONNELL, J., because of illness, was not present at the argument of this case and did not participate in the decision.

JACKSON, J., retired, recalled to participate herein in place of COLE, J., absent because of illness.