Arthur P. LAGE, Plaintiff,

v.

CALDWELL MANUFACTURING COMPANY, A Corporation, Defendant.

Civ. A. No. 440L.

United States District Court
D. Nebraska.

April 3, 1963.

Oscar A. Drake, Kearney, Neb., Hugh H. Drake, Elmhurst, Ill., for plaintiff.

John P. Jensen and Kenneth H. Dryden, Kearney, Neb., Donald H. Zarley, Des Moines, Iowa, for defendant.

VAN PELT, District Judge.

Plaintiff, the holder of letters patent No. 2,691,958 issued October 19, 1954, in evidence as Exhibit 1, on an application filed April 17, 1953, brings this suit against defendant claiming infringement and damages. The patent in suit describes a wind oriented cattle feeder. Plaintiff is also the owner of patent No. 1,796,466 issued March 17, 1931, on a device of the same general nature.

On June 23, 1953, plaintiff licensed defendant exclusively to manufacture and sell the device, and defendant agreed to pay plaintiff a royalty of 50¢ for each unit sold. This agreement was canceled by the parties in 1957.

It seems unnecessary to set forth herein the claims of the complaint or answer except to say that at the pretrial conference it was agreed that the usual issues found in patent litigation are found here, namely, validity, infringement and damages. Other issues, reference to which is necessary in arriving at the result announced, will be referred to herein

The parties agree that the most relevant portion of the prior art is plaintiff's 1931 patent above mentioned. It differs from the patent in suit mainly in that vertical and horizontal U-shaped members, shown in figure 3 of Exhibit 1, were added after the 1931 device proved unsatisfactory in that when cattle leaned on the feeder or bumped against it they broke the bottom of the feeder box.

In 1949 plaintiff in attempting to remedy the defect in the 1931 device, tried placing a U-shaped member on the device running from side to side in the position of #23 of Figure 3 of Exhibit 1. Later he added a U-shaped member running from front to back. In the oral argument it was claimed that this 1949 improvement was in 1953 a part of the

prior art and thus defeated his 1953 application and patent. The court concludes that it is unnecessary to pass on that argument in view of the conclusions hereinafter reached.

It is conceded by both parties that while plaintiff's patent calls for a horizontal U-shaped member, which is shown upon Figure 3, of Exhibit 1, that such member was never used on the model plaintiff used for experimentation prior to the 1953 application and was never used upon defendant's feeder.

It is argued by defendant that its feeder does not infringe plaintiff's patent because of the non-use of this horizontal member. Again, in view of the conclusions hereinafter expressed, it is unnecessary to pass upon the matter of infringement.

It is undisputed that wind oriented devices were not new either in 1953 or in 1931. The idea was known as early as November 2, 1914, as shown by the patent application of an Englishman (See page 13, defendant's Exhibit "O").

On March 25, 1953 plaintiff signed a patent application which was filed April 17, 1953, (See defendants' Exhibit "A", being the file wrapper and contents of patent No. 2,691,958). The drawings attached to the original application were identical to the drawings shown in the patent issued. Compare page 11 of Exhibit "A" and the drawings shown on plaintiff's Exhibit 1. Likewise the description in the specifications of the original application of the three U-shaped members is identical with that in the patent as granted. In the original application four claims were made. In each there was reference to "a box receiving frame mounted on the upper end of said shaft."

Digressing momentarily, counsel in the oral argument contended that the horizontal U-shaped member was not a part of the frame. While it is not material to the decision reached, this argument is not persuasive. The specifications and the figures clearly show the frame to consist of three U-shaped members.

This application was denied on or about January 14, 1954, as being unpatentable. From the denial we quote:

"Claims 1 through 4 are rejected as unpatentable over the disclosure in the patent to Lage. The patent to Lage discloses a device having all the structural elements set forth in these claims except for the skeletonized support for the upper bearing which is set forth as a bracket, and the removable food container."

On April 8, 1954 amendments were filed on which another examiner on May 7, 1954 issued the patent in suit. The claims as allowed in the patent in suit were specifically set forth in the amendments.

The prior art as shown in Barrow, page 6, Exhibit "O", shows the use of steel supports underneath a receptacle such as a tub and shows the end of the support on which the receptacle rests to be bent or curved upward whereby with a spring attachment the tub or receptacle was made more secure to the base. This patent is not cited by the examiner but is mentioned only because it gives support to defendant's claim that the patent should not have been granted because the steel straps or U-shaped members, as they are referred to in the patent, were a strengthening device known to the prior art in many fields and would have been obvious to a "person having ordinary skill in the art to which the subject matter pertained". Under 35 U.S.C.A. § 103:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

The court agrees that this patent should never have been issued.

■ It is a well recognized rule that the presumption of validity which attaches to a patent is weakened when pertinent prior art, such as the Barrow patent, is not cited or referred to by the patent office. McClintock v. Gleason, 9 Cir., 94 F.2d 115.

■ When the validity of a patent is an issue the dispute is no longer merely between the parties. It has recently been said in Rota-Carb Corporation v. Frye Manufacturing Company, 8th Cir., 313 F.2d 443, decided February 19, 1963, " * * * the public is a silent but an important and interested party in all patent litigation, and is entitled to protection against the monopolization of what is not lawfully patentable."

■ It is also to be noted that the advancement of science and the useful arts is the main object of the patent system and that reward to an individual is secondary and a means to an end. United States v. Masonite Corp., 316 U.S. 265, 278, 62 S.Ct. 1070, 86 L.Ed. 1461.

■ Plaintiff is correct that a patent is presumed to be valid and the defendant has a heavy burden to carry in establishing its invalidity. The court is convinced, however, that it has been met in the instant case. Initially the presumption in the instant case is not as strong as it is in some other cases. The application which was allowed was not contested and did not receive the scrutiny of anyone except the allowing examiner; also two examiners studying the same drawings and specifications, although somewhat different claims were included, reached different conclusions on patentability. This is analogous to the situation presented in Rota-Carb Corporation v. Frye Manufacturing Company, supra, where the court said:

"It is difficult to understand how, after rejecting all of Harmon's claims in his application Serial Number 165,946, filed in June 1950, for a machine obviously designed to practice the method allegedly conceived by him for spot carbonization, the Patent Office concluded to grant him the patent in suit."

It should be noted that the claims rejected by the patent office were for a machine and method patent while the patent in suit was a method patent only. The methods described in the rejected and allowed claims were sufficiently similar to cause the court to make the above comment. In the instant case it is difficult to see why the Patent Office denied the claims filed in 1953 and allowed the amended claims filed in 1954. The drawings and specifications were the same in both instances, although the device was described generally in the first set of claims, while in the second set the emphasis was placed on the frame and it was described in detail.

Note also what was said at a recent patent law seminar:

" * * * don't rely too heavily on Section 282 of the Patent Act of 1952—[the section creating the presumption on which the plaintiff relies] it probably doesn't mean what the patent bar intended it to mean. * * *

"First of all, remember that a presumption is not evidence and disappears as soon as direct or positive evidence is introduced." Dynamics of The Patent System, Villanova University School of Law, pp. 39, 40 (1960).

The discussion proceeds to explain that the section places on the defendant the duty to go forward with the proof and does not shift any burden of proof to the defendant. The available legislative history indicates that the section codifies the judicially created presumption in all of its varying degrees.

■ As has been indicated, the court bases its holding, not on anticipation as it is technically known, but on the ground that the patent does not demonstrate invention, and was the result of experimentation and the application of mechanical skill to the solution of a problem apparently known only to the plaintiff.

Gardner v. Buxton, 8th Cir., 150 F.2d 242, states in part:

"But the mere application of a common expedient to an ordinary use in another art, especially where it has not been clearly demonstrated that a recognized problem has existed in the immediate field and has defied previous solution, is not generally invention." (150 F.2d 243)

This is applicable to the instant case. The plaintiff was thoroughly familiar with the disclosures of the 1931 patent; he also knew that cattle bumping against the feeder caused the bottom to break out. In searching for a method of strengthening the device to prevent this breakage, he tried one vertical U-shaped member; still the feeder was not strong enough so he added another. Those two members gave the device the needed strength. It is not enough that experimentation is required to find the combination that works well or best if the steps are clearly suggested by the prior art or would have been obvious at the time of the "invention" to a mechanic skilled in the art and familiar with the problem that requires solution. See Application of Schulze, CCPA, 244 F.2d 320. The patents cited and the testimony show that straps of metal and other substances fastened to the outside of boxes for added strength were known in many arts. The same applies to frames attached to boxes or in which boxes sit without attachment. The detail with which the frame is described in the specifications and claims does not change this.

The court, in Gardner, supra, went on to say:

"It is, of course, not invention, as has been many times said, 'to produce a device which a skilled mechanic would produce when required to effectuate a given result.' Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., supra [148 F.2d 497, 502, 8 Cir.]." (150 F.2d 244)

■ Generally there is no invention involved in merely adding strength or reinforcement to a device. See In re Buckwalter, 27 CCPA 1002, 109 F.2d 811, 815; Electroline Co. v. Reliable Electric Co., 7 Cir., 101 F.2d 380, 382, and Electric Vacuum Cleaner Co. Inc. v. P. A. Geier Co., 6 Cir., 118 F.2d 221, 225. Where superior results are in substance the basis for a claim, they must be unexpected and non-obvious. Goldman v. Bobins, 7 Cir., 245 F.2d 840.

■ Another factor which operates strongly against the plaintiff appears in Continental Farm Equipment Co. v. Love Tractor, 8th Cir., 199 F.2d 202, 204, where the court said:

"When combination patent claims are under examination, courts should scrutinize them with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. [Great] A. & P. Tea Co. v. Supermarket [Equipment] Corp. [340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162]."

To sustain a combination patent it must be shown that there is invention in the combination and not merely an aggregation of known elements each performing its known function. The combination as a whole must exceed the sum of its parts; that is to say, there must be more than the total of the functions each element was known to be capable of performing. Great A. & P. Tea Co. v. Supermarket Equipment Corp., supra.

Simplex Paper Box Corporation v. Rosenthal Paper Co., 8 Cir., 104 F.2d 349, 351, sets forth the following propositions:

"A new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. The new and useful result must be the joint product of the elements of the combination. [citations omitted] The use of an old method to produce an old result is not invention. [citations omitted] A mere aggregate of results, each the result of one of

the combined elements, is not invention, even though the result marks an advance in efficiency and utility. In such case it is only an exercise of mechanical skill and not invention. [citations omitted]"

To the same effect, see John Blue Company v. Dempster Mill Mfg. Co., 8 Cir., 275 F.2d 668, 672–673.

 The court concludes that the addition of the steel strap framework does not achieve any new or non-obvious results and that the patented device is an aggregation of known elements performing the same functions they performed in this and other arts. One who claims a combination has a heavy burden to carry in showing that his alleged patent is more than a mere aggregation. Guiberson Corp. v. Garrett Oil Tools, Inc., (5th Cir.), 205 F.2d 660, 664. A distinguished district judge in this circuit has said that combination claims are presumed unpatentable. Rhinehart Development Corp. v. General Metal Ware Co., D.Minn., 134 F.Supp. 323, 326.

 It is, of course, true that the defendant, in attempting to show that all the elements in the patented device are found in or clearly suggested by the prior art, is not required to point to a single device containing all the elements. Allied Wheel Products Inc. v. Rude, 6th Cir., 206 F.2d 752, 760. Even if a combination patent application contains one claim that is per se patentable, and such is not the case with the Lage patent, the combination is not patentable unless as a whole it contains invention or produces nonobvious results. Application of Tibony, CCPA, 241 F.2d 953, 956.

Plaintiff urges certain indicia of patentability in support of his patent. It should be noted at the outset of this discussion that these "hallmarks of patentability", as plaintiff calls them, are not to be considered unless the question of invention is close or, as was said in Evr-Klean Seat Pad Co. v. Firestone Tire & Rubber Co., 8th Cir., 118 F.2d 600, 603, "hangs on the thread of doubt". 69 C.J.S. Patents § 70. The court does not view the question of patentability as a close one, but nevertheless deems it appropriate to briefly discuss plaintiff's contentions concerning certain "hallmarks".

 The first "hallmark" plaintiff urges is satisfaction of an existing need which others have failed to fulfill. The record does not establish either of the elements of this "hallmark". It does not show that there was a need for a feeder like that described in plaintiff's patent or that other feeders then on the market were not adequate. As will be discussed later, the sales of the Sta-Dri feeder may as readily be attributed to causes other than the satisfaction of any need in the art. This "hallmark" assumes that the device manufactured and sold by the defendant is the equivalent of that described in plaintiff's patent. There is an absence of evidence that others were attempting to develop a device like plaintiff's or were working and experimenting in attempts to remedy a defect such as that found in plaintiff's 1931 device. Specifically, it is not shown that the other wind oriented feeders on the market had defects in strength or in their structures. On this point the record shows only that plaintiff's 1931 device broke at the bottom of the box when cattle bumped against it and that the addition of the steel strap framework described in the patent in suit and found in part in defendant's device corrected this defect. In any event satisfaction of a long existing need is at most evidence which may help decide a close question of invention. Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973.

 Plaintiff next contends that the commercial success of the Sta-Dri feeder is strong evidence of patentability particularly where it is the first device of its kind to achieve commercial success. It has not been shown that whatever commercial success the Sta-Dri feeder had is attributable to any novelty in plaintiff's patent. The record does not show how the sales of defendant's device compared with sales of other or com-

peting wind oriented feeders, neither does it show that such other feeders did not achieve commercial success or that plaintiff's feeder is better than the others. The sales may well be attributable to extensive sales promotion by defendant or to the fact that the Sta-Dri feeder can be manufactured and sold more cheaply than competitive feeders. In a doubtful case commercial success, especially in astonishing proportions, may tip the scale in favor of the plaintiff, but as was said in Evr-Klean, supra, it is not important except in a very close case. Commercial success without invention cannot supply patentability. Selmix Dispensers, Inc. v. Multiplex Faucet Co., 8th Cir., 277 F.2d 884, 887. If low production cost is the reason for the commercial success, that may not be accepted as evidence of invention. American Cork Specialties Co. v. Robbins, E.D. N.Y., 61 F.Supp. 681. The court should also attach some probative value to that fact that for several years after the license agreement was canceled plaintiff did not commercially exploit his patent under another license agreement or otherwise; there is evidence that he has recently licensed another manufacturer to use his patent, although the terms of the agreement are not disclosed.

Plaintiff's third "hallmark" is copying by the defendant. It is contended that this is strong evidence of invention. Until 1957 when the license agreement was canceled, defendant had a contract right to copy the plaintiff's patent as closely as it chose regardless of its validity. Defendant contends that by the time of the cancellation it had become convinced that plaintiff's patent was invalid and that plaintiff knew it; in addition defendant was tooled for production of the Sta-Dri feeder. Defendant made certain changes in its device not suggested by the plaintiff's patent, the most important of which is the omission of the horizontally disposed U-shaped strap; thus the similarity between the defendant's device and the plaintiff's patent is not as great as plaintiff suggests.

Imitation may indicate invention, but may not supply it where it is otherwise lacking; also one who reproduces a patented device proclaims to the world his disbelief in the validity of the patent. This generally is the manner in which validity is tested. See United States Gypsum Co. v. Consolidated Expanded Metal Companies, 6th Cir., 130 F.2d 888. Defendant's evidence shows that imitation by it after it lost the contract right to imitate was in the belief that plaintiff's patent was not valid. This is shown in part by correspondence between the parties before the license agreement was terminated. Neither is a licensee, who no longer represents to the public that he is manufacturing the patented device, estopped to deny or contest the validity of the patent. N. S. W. Co. v. Wholesale Lumber & Millwork Co., 6th Cir., 123 F.2d 38, 41. As is the case with the other makeweight factors the fact that persons have paid for a license to manufacture a device described in a patent is not evidence of patentability where lack of invention clearly appears. Ashcraft v. National Theatre Supply Co., 4th Cir., 108 F.2d 828, 832.

In Ryan Distributing Corporation v. Caley, 3d Cir., 147 F.2d 138, 142, in discussing indicia of patentability the court said:

"The grant of the patent, the public acceptance of the article, its copying by plaintiff [who was charged with infringement], plaintiff's seeking an improvement patent thereon, economy of production, expert testimony to the effect that it was not obvious to those skilled in the art [an element not involved in the instant case], these are all evidence tending to show invention. But they do not conclusively indicate invention as defendant urges. Such evidence, when doubt exists, may resolve that doubt in favor of him who submits it, but where as here there is a clear-cut case of lack of invention such evidence cannot successfully controvert it."

Having concluded that plaintiff's patent is invalid, the issues of infringement and damage do not need to be decided.

An order has been entered denying the prayed for relief.